**Robert D. HAMMOND, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

Appeal No. 85–2450.

United States Court of Appeals, Federal Circuit.

Feb. 20, 1986.

Shelby W. Hollin, San Antonio, Tex., submitted for petitioner.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Sandra P. Spooner, Asst. Director and William J. Snider, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent. Murray M. Meeker, Office of the General Counsel, Office of Personnel Management, Washington, D.C., of counsel.

Before DAVIS, BENNETT, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Robert D. Hammond (Hammond) seeks review of a final decision of the Merit Systems Protection Board (Board), 27 M.S.P.R. 392, affirming the reconsideration decision of the Office of Personnel Management (OPM) which denied his application for disability retirement. We dismiss for lack of jurisdiction.

## BACKGROUND

Hammond began his employment with the Department of the Air Force (agency) in September 1969. On July 27, 1981, he was placed on medical restrictions which the agency determined prevented him from performing the duties of his position. Effective February 9, 1982, the agency put Hammond in a leave status pending final disposition of his case. The agency stated that such action was not within its discretion, but that it was obligated to accept the medical opinion that Hammond was disqualified for performance of the official duties of his current position. He was advised by the agency that the "options" available to him were voluntary disability retirement, involuntary disability retirement initiated by the agency, or separation for disability.

The agency on June 4, 1982, notified Hammond of his proposed separation due to disability and on June 30, 1982, a letter of final decision was issued separating Hammond, effective July 9, 1982, "in accordance with AFR 40–750, and in accordance with Chapter 75 of Title 5, United States Code."

Hammond submitted a disability retirement application to OPM on June 23, 1983, which application was disapproved. He appealed to the Board and then to this court

following OPM's denial of the request for reconsideration of his disability retirement claim.

## OPINION

Hammond maintains that this court has jurisdiction over his appeal pursuant to 5 U.S.C. § 7703(b)(1) (1982) and *Lindahl v. Office of Personnel Management,* —— U.S. ——, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). As his principal argument, Hammond alleges that the denial of his claim is based upon a misconstruction by OPM of its own regulations, resulting in OPM's denial of his reconsideration request. Hammond urges that this error on the part of OPM constitutes a "misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." *Lindahl,* 105 S.Ct. at 1633.

In support of his position, Hammond makes the following argument: Under 5 U.S.C. § 8337 an employee is "considered to be disabled only if the employee if [sic] found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service," 5 U.S.C. § 8337(a) (1982). "Useful and efficient service" is defined by OPM as "(1) either acceptable performance of the critical or essential elements of the position or the ability to perform at that level; and (2) satisfactory conduct and attendance." 5 C.F.R. 831.502(a) (1982). Title 5 U.S.C. § 4301(3) (1978) defines "unacceptable performance"—giving rise to a reduction in grade or removal of an employee—as "performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position." Accordingly, per petitioner, OPM misconstrued its definition of "useful and efficient service" by indicating that its disapproval of Hammond's disability retirement application hinged on the finding that Hammond was not "prevented from performing *a critical element* of the position." Petitioner's Appendix, at 10 (emphasis added). Petitioner finds support for his argument in the following statement of the presiding official which summarized OPM's finding:

> In its July 1984 reconsideration determination in which it sustained its earlier decision, OPM found that while the work restrictions imposed on appellant because of his medical condition prevented him from performing the more arduous duties of his position, there was no showing that they prevented him from performing a critical element of his position.

*Hammond v. Office of Personnel Management,* No. DA831L8410504, slip op. at 5 (Nov. 9, 1984).

Hammond would have this court believe that the presiding official based his decision on this single ambiguous statement by OPM.[1] Such is not the case as the presiding official made extensive findings of fact on the disability issue.[2] Hammond is merely arguing the factual underpinnings of the Board's decision; the gist of his position is that under the facts of this case he is actually disabled. That is a factual inquiry beyond our *Lindahl* jurisdiction. *See Lee v. Office of Personnel Management,* 762 F.2d 987 (Fed.Cir.1985).

DISMISSED.

BISSELL, Circuit Judge, Additional Views.

I feel compelled to elaborate on the concerns expressed by this same panel in the

---

1. See Additional Views of Judge Bissell.

2. For example the presiding official stated that Hammond acknowledged that he was able to perform the duties of his position with a lower back problem, and that he was able to resume those duties after injuring his upper back in May 1981. The presiding official also observed that "[Hammond's doctor] noted in his August 1983 letter that ... there had been no significant change in appellant's condition in the past four to five years." It was on that basis that the presiding official found that Hammond "has not met his burden of proof in showing that pain disabled him in the performance of his duties." *Hammond,* slip op. at 8.

opinion so ably written by Judge Davis in *Lindahl v. Office of Personnel Management,* 776 F.2d 276 (Fed.Cir.1985). In *Lindahl,* as in this case, the petitioner was removed for being unable to perform the duties of his position because of medical restrictions. In both cases, the agency's removal action was not appealed to the Board. After holding in *Lindahl* that "accordingly we have no jurisdiction whatever over the propriety of that removal," *id.,* at 280, the court stated:

> We add, however, that we are disturbed by the evident tension between (1) a removal for physical inability to do the job and (2) a subsequent denial to the same employee of disability retirement. We expressly leave open, for a case in which the issue is properly before us, the resolution of problems inherent in the relationship between the two actions.

## I   Chapter 43

The tension between the removal action and the denial of disability is graphically highlighted in this case by OPM's finding that it did not feel that Hammond was "prevented from performing *a critical element* of the position." It is not clear whether OPM's statement means that if an employee can perform at least one critical element of his position, he is not disabled, or, whether this finding should be read as stating that the employee to qualify for disability retirement must present evidence that he is unable to perform at least one of the critical elements of his job.

As the petitioner points out, under 5 U.S.C. Chapter 43 and 5 C.F.R. Part 432 an employee can be reduced in grade or removed when the employee fails to meet a single critical element of his position. The agency bears the burden of proof in these cases and its decision will be sustained only if supported by substantial evidence. Whereas, in physical disability retirement cases, the burden of proof rests upon the employee-applicant and that burden is one of a preponderance of the evidence. *Lindahl,* 776 F.2d at 276. But neither the OPM, the Board, nor this court has clarified to what the employee's burden of proof must relate.

## II   Chapter 75

I am troubled by the provisions of 5 C.F.R. § 630.401 (1969) which provide that an "agency *shall* grant sick leave to an employee when the employee ... [i]s incapacitated for the performance of duties by sickness, injury...." The Federal Personnel Manual (FPM) in providing instructions for Chapter 75—Adverse Actions—states that the general rule is that an agency may not take an adverse action "based on the employee's use of leave which the agency has approved—sick, annual, leave without pay." 752 FPM 3–2(b)(4)(a) (1980). "The one exception to the general rule ... is that [an] adverse action may be taken based on a record of excessive unscheduled leave without pay.... This exception would be applicable only under certain unusual circumstances, e.g., the inability of an employee to return to duty or to work on a regular basis because of the continuing effects of illness or injury (on or off-the-job)." 752 FPM 3–2(b)(4)(c) (1980).

It may well be that since the passage of the Civil Service Reform Act (CSRA), an employee may no longer be removed under Chapter 75 for disability but must be removed for physical inability to do the job, based upon a charge either of misconduct (for example, being absent without leave) or of performance related deficiencies. This seems to be the import of the following statement of OPM in 752 FPM 3–2(a)(1)(a) (1980): "Causes for adverse action may be reasons personal to the employee such as on or off-the job misconduct, inefficiency, or physical or mental inability to perform the duties of the position." However, "an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (1982). Query: For such a "disability" removal is there a difference between promoting the "efficiency of the service" and rendering "useful and efficient service"? If there is no difference, it seems that there must be a concurrent

finding of "disability" under Chapter 83 when a Chapter 75 "disability" removal action is sustained.

### III *Piccone*

My concerns are further heightened as the presiding official in this case held:

> Entitlement to a disability annuity does not require a condition of complete helplessness or inability to perform any of the functions of a particular position. *McGhee v. Office of Personnel Management*, [20 M.S.P.R. 372] MSPB Docket No. DC831L8310330 (April 20, 1984). Nevertheless, an individual can be too disabled to perform the duties of his position but not disabled enough to be entitled to a disability retirement annuity under 5 U.S.C. § 8337. *Piccone v. United States*, 407 F.2d 866 [186 Ct.Cl. 752] (Ct.Cl.1969); *Smith v. Office of Personnel Management*, MSPB Docket No. AT8341L8210930 (August 1, 1983).

*Hammond v. Office of Personnel Management*, No. DA831L8410504 slip op. at 8 (Nov. 9, 1984). Since *Piccone* was decided prior to the enactment of the Civil Service Reform Act and prior to the repeal of the definition of disability in 5 U.S.C. § 8331 (1982) and the promulgation by OPM of the regulation defining "useful and efficient service," the holding in *Piccone* may have to be reexamined by this court in the context of a removal action.

Judge Davis in *Piccone* set forth the employee's dilemma:

> The regulation[*] is clearly meant to save a government employee from the awkward position of prosecuting two separate personnel actions at the same time, especially where he may be forced to take inconsistent stands in the different actions because of seemingly contradictory Government positions. By making application to the Bureau of Retirement and Insurance, the employee is urging his total disability; to protect himself from a separation—for disability action

at this time would require him to contend that he was not disabled at all.

. . . .

> He would be required, as Piccone was here, to argue to the Commission that he was totally disabled in order to obtain disability retirement, while trying to convince his employer that he was not physically impaired to such a degree as to make him unfit for work. This leaves him in an untenable trap, creating evidence against himself in both proceedings, if he conscientiously wishes to protect his rights to both job and retirement-annuity. For practical purposes he may well be required to elect whether to appeal the disability-retirement decision or to contest the separation-for-disability action, forfeiting the one or the other. The Navy regulation, it seems to us, was specifically designed to free the employee from this dilemma, and to allow him to pursue his retirement application to its administrative end without having to stultify himself.

. . . .

> The regulation's core assumption is that there should be no conflicting tugs on the employee as he exhausts his demand for disability retirement.

*Id.* at 873, 874 (footnotes omitted).

At present there is no OPM regulation comparable to the Navy regulation discussed in *Piccone*. In fact, it appears that OPM has proceeded in the opposite direction. In promulgating amendments to its regulations to provide specific authorities and procedures for agencies to require or request medical information relevant to making a personnel management decision, OPM received numerous comments. 49 Fed.Reg. 1321 (1984). In its response to these comments, OPM provided insight as to the relationship between personnel actions based on deficient performance, conduct, or attendance and disability retirements.

---

* The regulation at issue was Navy Regulation, NCPI 352.4–7(c)(2) (1961) which provided: "When an employee * * * has applied for disability retirement, Separation-Disability action will not be initiated until a determination on his application has been made by the Civil Service Commission."

Responding to an objection to 5 C.F.R. § 831.501(d), which provides that an employee's application for disability retirement shall not preclude or delay any other appropriate personnel action by the employing agency, OPM stated that the "provision was added to clarify that an employee's decision to apply for disability retirement is independent of an involuntary separation, and that the separation is not to be delayed for reasons beyond the agency's control." 49 Fed.Reg. 1321, 1326 (1984).

The perceived independence between management personnel decisions and disability retirements is further evidenced by the following comment and OPM's response thereto:

5. *Comment:* Commenting labor organizations and two agencies felt that adverse action procedures for removal and the agency-filed application should parallel each other, but the removal action required by § 831.1205(a) should not automatically precede the agency's request for disability retirement.

*Response:* OPM declines to adopt this suggestion. Current regulations and guidance provide for the retention of the employee on the agency's rolls until OPM has acted on the agency's application for an employee's disability retirement. If OPM allows the disability claim, the employee is then removed from the agency's rolls onto the civil service annuity rolls. Should OPM disallow the claim, the agency is left with an employee who it has already determined is no longer employable and who it has notified of an intent to remove from the Government. The time that elapses between the agency's notice of proposed removal and the disallowance of the disability claim by OPM can be substantial, and if the agency proceeds with an action under Parts 432 or 752 of OPM's regulations, the time may be so long that the agency needs to compile further documentation to support an action under the removal procedures.

The change contained in § 831.1205(a) is *consistent with the purposes of Civil Service Reform Act of 1978 that actions adverse to employees be based on documented deficiencies in performance, conduct, or attendance, and that warranted actions be taken and completed expeditiously.* It is also consistent with conclusions of former Congresswoman Spellman's Subcommittee on Compensation and Employee Benefits that separations for medical reasons may be more stigmatizing than those based on the actual deficiency in performance, conduct, or attendance. OPM intends that agencies' removal actions be reviewable quickly on their merits and that they stand or fall based primarily on whether the employee concerned can provide useful and efficient service to his/her employing agency. Whether or not the employing agency concurrently files an application for disability retirement benefits for the employee is a separate issue. Even if the agency did not do so as early as it might have, this error would not be harmful to the employee since the one-year time limit for filing does not apply when an employee is found to have been incapable of making a decision to file an application for disability retirement at the time of his/her separation.

OPM wants to discourage agencies from attempting to file an application for disability retirement on behalf of the employee where some other personnel action is appropriate, even an adverse action. *The unnecessary use of the "agency-filed" disability retirement provisions of the Civil Service Retirement law as an agency management tool is viewed by OPM as an abuse of this provision.* Under the revised procedures, we believe that managers will be more confident in addressing employee performance problems and that they will not delay in taking appropriate and timely actions based on the employee's performance.

*Id.* at 1327 (emphasis added).

It appears from the foregoing that OPM may well agree that the so-called "Proposed Separation-Disability" as it existed in *Piccone,* no longer exists. I am in sympa-

thy with OPM that the use of disability retirement as an agency management tool is an abuse and should not be condoned. However, it appears from the physical disability retirement cases appealed to this court that the whole focus of the removal action by both the agency and the employee has been not saving the employee's job but getting the employee his disability retirement. The employee does not want his job, he wants his disability retirement and the agency, as a management tool, helps matters along. Therefore, the removal action is rarely, if ever, appealed.

## IV

Accordingly, questions remain unanswered, *e.g.*, since an employee can be removed by the agency under Chapter 43 for failing to meet a single critical element of his job, if the cause is health related how does this correlate with OPM's disability retirement requirements? Similarly, in reviewing a "disability" removal under Chapter 75, what is the difference between "efficiency of the service" and "useful and efficient service"? I have no answers, just a great many questions which I think need answers, and OPM is the logical agency to provide the answers. However, if OPM does not address the problem, I am confident that some attorney will be inventive enough to someday have before this court a consolidated appeal, similar to that of *Anderson v. Morgan*, 263 F.2d 903 (D.C. Cir.1959), at which time this court will, of necessity, have to address them.