**Charles A. THOMAS, Petitioner,**

v.

**GENERAL SERVICES ADMINISTRATION, Respondent.**

**Appeal No. 85–2603.**

United States Court of Appeals, Federal Circuit.

June 18, 1986.

---

662

Elliot B. Platt, Philadelphia, Pa., argued for petitioner. With him on brief was Stefan Presser.

Jeffrey B. Mulhall, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director.

Before RICH and DAVIS, Circuit Judges, and MILLER, Senior Circuit Judge.

DAVIS, Circuit Judge.

This appeal challenges petitioner's removal from his position (as a Training Specialist with the General Services Administration (GSA)) on six charges of having made statements and engaged in actions that conveyed threats of bodily harm to fellow employees. The Merit Systems Protection Board (MSPB or Board) sustained the removal (MSPB No. PH07528310635), 27 M.S.P.R. 401, and the case is now here. We affirm.

I.

This removal case is closely related to petitioner's separate suspension case which we decided in *Thomas v. General Services Administration,* 756 F.2d 86 (Fed.Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985) (*Thomas I*). In that opinion—which dealt with petitioner's suspension pending consideration of a potential disability retirement application filed for him by GSA—we summarized the factual background of both that case and this one:

Petitioner was a training specialist with the Federal Protective Service (FPS), the division of GSA responsible for law enforcement on government property. In this capacity, he was responsible for training other FPS officers, training and evaluating contract security guard services, and similar duties involving FPS personnel.

Problems within his office arose because petitioner repeatedly exhibited what has been said to be bizarre behavior. Specifically, the agency's charges alleged *inter alia,* that petitioner would level a realistic-looking toy pistol at fellow employees to practice his aim; that petitioner would practice martial arts on soda machines and other objects; and that petitioner on one occasion hacked at a cardboard carton with a scissors while saying "even this is too good for her"— allegedly referring to a fellow employee. According to GSA, petitioner also discussed an incipient revolution (of which he would be a part) with such conviction and in such detail that his fellow employees became nervous in petitioner's presence.

In January 1982 GSA ordered petitioner to submit to a psychiatric fitness-for-duty examination. After the examination, at which the psychiatrist found him to be highly paranoid, GSA placed him on involuntary sick leave. Soon thereafter, on May 22, 1982, the GSA proposed petitioner's suspension from the federal service, citing both his behavior around the office and its adverse impact on the other employees as the cause. In a notice to petitioner, GSA said that the proposed suspension would run until GSA decided whether to apply for disability retirement on petitioner's behalf; if the GSA decided so to apply, the notice continued, the suspension would remain in effect pending a decision on the application. On June 10, 1982, GSA sent petitioner final notice that it had decided to proceed with a disability retirement application. Two

weeks later, GSA notified him of its decision to place him on indefinite suspension pending a decision on that application. *Id.* at 87.

GSA's application for disability retirement was denied by the Office of Personnel Management, and the suspension was upset by a presiding official of the MSPB. GSA then proposed Thomas' removal on the six charges now before us and the agency sustained those charges. Petitioner appealed that removal to the MSPB.

Meanwhile, the suspension action was proceeding independently before the Board. The presiding official, as we have said, rejected that agency action but the full Board, though it said the MSPB had no jurisdiction over such a suspension, held that the presiding official was wrong on the facts and that the record sustained the agency's reasons for the suspension. In *Thomas I*, this court reversed the Board as to its jurisdiction but affirmed its factual findings and directed the upholding of the agency's suspension action.

The removal action—now being considered[1]—was then decided by the MSPB on the record made in the suspension proceeding.[2] Though the presiding official disagreed with the full Board's findings in its suspension decision, on review the full Board (a) applied the principles of issue preclusion (collateral estoppel) to the four of the six removal charges which were identical to incidents presented in the suspension proceeding; (b) sustained (as supported by the evidence) one of the two additional specifications made in the removal action; (c) rejected petitioner's defense of retaliation; (d) held that the agency had proved that the removal action promoted the efficiency of the service; and (e) upheld that penalty of removal. Thomas now attacks each of these holdings but, as we shall show, his arguments are meritless.

## II.

■ Like other judicial or quasi-judicial tribunals deciding on the basis of an adversary, litigated record, the MSPB can apply the doctrine of issue preclusion in the appropriate circumstances. *Graybill v. U.S. Postal Service*, 782 F.2d 1567, 1571 (Fed.Cir.1986); *Otherson v. Department of Justice*, 711 F.2d 267 (D.C.Cir.1983); *Chisholm v. Defense Logistics Agency*, 656 F.2d 42 (3d Cir.1981). Issue preclusion is normally applicable if (i) the issue previously adjudicated is identical with that now presented, (ii) that issue was "actually litigated" in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action. *See Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569, 221 USPQ 394, 397 (Fed.Cir. 1983). Here, all these requirements are met.

■ Since four of the incidents charged against Thomas in the removal proceeding are completely identical with four of the incidents alleged in the prior suspension case, it is beyond dispute that those issues are identical. Petitioner says, however, that the full Board never really decided those factual questions because it held the entire suspension proceeding beyond MSPB jurisdiction. But our opinion in *Thomas I* makes it absolutely clear that the MSPB *did* have jurisdiction and that it had properly found the facts (as to those four incidents) to be as the agency presented them. We said that "the [full] Board thoroughly appraised the record and found facts which have a direct bearing on the propriety of GSA's action ...." *Thomas I*, 756 F.2d at 90. We also referred expressly to the Board's finding of "several incidents illustrative of [petitioner's] inappropriate, disruptive, and threatening behavior in the workplace. In that connection the MSPB summarized the testimony of and memoranda written by Thomas' co-workers—all of which were found to be credible by the presiding official—in which they described

---

1. *Thomas I* made it very clear that that decision considered only the suspension, not the removal. 756 F.2d at 87 n. 1, 88 n. 2.

2. Thomas waived his right to a further hearing.

petitioner's actions and expressed anxiety regarding petitioner's ability to control his behavior." *Id.* These Federal Circuit holdings rested squarely on the full Board's opinion and order (reversing the presiding official's suspension decision) which shows on its face that the full Board made its own findings on the preponderance of the evidence. *Thomas I* then sustained those findings as supported by substantial evidence on the record as a whole.

The other prongs of the doctrine of issue preclusion likewise exist for this litigation. The factual truth of the four incidents was actually litigated by the parties before the presiding official, the full Board, and this court;[3] and the factual truth of those incidents was obviously necessary to the affirmance of the agency's suspension order which we directed in *Thomas I.*[4]

### III.

The one specification (sustained by the MSPB) which was not involved in the suspension proceeding was specification 4, dealing with a "battle plan" which petitioner is said to have shown to a co-worker (Ms. McColgan), causing her fear and apprehension. Ms. McColgan testified at the MSPB hearing, and there is substantial evidence supporting the full Board's finding that petitioner had first told her that a revolution (of which he would be a leader) would occur and she (along with other supervisors) would be victims—and then showed her the "battle plan" which apparently was designed to carry out this project, thereby intimidating her, and arousing fear of harmful action. This evidence is sufficient to show that petitioner appeared ready to commit a harmful act and that Ms. McColgan was afraid that he would. That is enough to show the miscon-

duct charged. *See Williams v. Veterans Administration,* 701 F.2d 764, 765–66 (8th Cir.1983).

### IV.

The remainder of petitioner's points can be disposed of very briefly. On the findings which have been upheld, there obviously was a deleterious impact on the efficiency of the service. Thomas' retaliation accusation—that his removal was a reprisal for his having previously been a whistleblower—was considered and rejected both by the presiding official and the full Board on the sustainable grounds that no retaliation was shown and in any event there was no nexus between the retaliation and petitioner's removal. Similarly, Thomas' claim that the First Amendment was violated because the removal proceeding was motivated by his whistleblowing activity is destroyed by the presiding official's sustained and sustainable finding that no such causal connection has been proved. The penalty of removal, as we have often reiterated, is within the agency's discretion (*see, e.g., Schapansky v. Department of Transportation, FAA,* 735 F.2d 477, 484 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984)), and here that discretion was certainly not abused, especially in view of the resonance of threats of physical violence inherent in the charges upheld against Thomas.

Finally, there is the matter of petitioner's possible psychological disability. The agency sought disability retirement for him, but this was refused by the OPM. In these circumstances, GSA could properly remove Thomas on account of his disruptive activity. *Tirado v. Department of Treasury,* 757 F.2d 263, 265 (Fed.Cir. 1985).[5] Petitioner now says that the agen-

---

**3.** The parties were represented by counsel at least before the MSPB and this court.

**4.** Thomas also contends that the full Board—when it initially remanded the removal case (in the same order in which it decided the suspension case) "for full adjudication of all charges and [petitioner's] affirmative defenses"—must have excluded the defense of issue preclusion.

There is, however, nothing to suggest that that normal remand order limited the agency in the arguments it could raise on remand or required it to produce witnesses even though a defense of former adjudication was directly applicable.

**5.** No appeal was taken to the Board or this court from OPM's denial of retirement disability. For that reason, there is not now properly

cy should have attempted to accommodate his disability within GSA. This issue was not properly raised before the presiding official or the full Board, and accordingly cannot be presented here. *Meglio v. Merit Systems Protection Board,* 758 F.2d 1576, 1577 (Fed.Cir.1984).

AFFIRMED.

presented to us any question of the potential tension between a refusal of disability retirement and a removal for emotional or psychological difficulty. *See Lindahl v. Office of Person-* *nel Management,* 776 F.2d 276, 280 (Fed.Cir. 1985); *Hammond v. Office of Personnel Management,* 784 F.2d 392, 393–97 (Fed.Cir.1986) (additional views of Bissell, J.).