**LONE STAR STEEL COMPANY and CF & I Steel Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Court No. 85–06–00790.**

United States Court of
International Trade.

Nov. 12, 1986.

See also, C.I.T. 650 F.Supp. 183.

**76**

Akin, Gump, Strauss, Hauer & Feld (Richard R. Rivers, Warren E. Connelly, Valerie A. Slater and William J. Long), Washington, D.C., for plaintiff.

Lyn M. Schlitt, General Counsel, Michael P. Mabile, Asst. General Counsel, and E. Clark Lutz, U.S. Intern. Trade Com'n, Washington, D.C., for defendants.

Mudge, Rose, Guthrie, Alexander & Ferdon (David P. Houlihan and Jeffrey S. Neeley), Washington, D.C., for defendant-intervenor.

## OPINION

RESTANI, Judge:

This action challenges a negative injury determination regarding oil country tubular goods from Argentina. The court has before it defendant intervenor Dalmine Siderica, S.A.I.C.'s motion to dismiss as moot, in which the International Trade Commission ("ITC") concurs.

The relevant facts are as follows. On July 23, 1984, ITC issued a preliminary *affirmative* injury determination. On January 16, 1985 the International Trade Administration of the Department of Commerce ("Commerce") issued an *affirmative* preliminary determination of sales at less than fair value ("LTFV"). Thereafter, a suspension of liquidation (finalization of assessment of duties) went into effect. On March 29, 1985, Commerce issued an *affirmative* final determination of sales of LTFV. On May 22, 1985, however, ITC issued a final *negative* injury determination. At this point the suspension of liquidation, premised on the preliminary antidumping findings, terminated.

On July 22, 1985, in order to take advantage of changes in the law regarding cumulation of effects of imports from various countries for injury determination purposes, plaintiffs filed a new petition under the antidumping duty laws covering the same products.[1] ITC again rendered an affirmative preliminary injury determination. Commerce commenced a new LTFV investigation covering the period from February 1, 1985 to July 31, 1985, rather than the three year period examined in the first case. This investigation resulted in an affirmative preliminary determination of sales at LTFV on January 27, 1986. Subsequent review, however, resulted in a final negative LTFV decision from Commerce. This decision has been challenged in another action.

The question before the court is what relief may the court grant if plaintiff is successful in this action. If there are past entries remaining to be liquidated which are only affected by this action, then a decision rendered by this court will have effect. Furthermore, if despite the second proceeding, judicial review of the first proceeding will have future legal impact, this action is not moot.

The basic issue here is what is the effect of commencement of a second antidumping petition and resulting determination affecting the same product. One might theorize that every entry presents a separate cause of action. What is before the court for review, however, is agency action, not with regard to single entries, but with regard to imports of specific products from specific countries during a specific time period. What is affected are individual entries which occur for an indefinite time forward. Because different time periods are under consideration, different determinations may result. An action with regard to one determination does not address the same *res* as does an action with regard to another determination. Consequently, principles

1. The amendments regarding cumulation were added to 19 U.S.C. § 1677(7)(C)(iv) (1982 & Supp. III 1985) by the Trade and Tariff Act of 1984, Pub.L. 98–573, § 612(a)(2)(A) (1984).

of *res judicata* do not apply.[2] Restatement (Second) of Judgments § 24(2) (1980).

A question remains as to whether the statutory scheme otherwise makes the first action moot because of the commencement of the second proceeding and the determinations which result therefrom. As to past entries, including those not possibly affected by the second proceeding, plaintiffs argue that the first proceeding may have some effect because all entries after September 12, 1984 are unliquidated as a result of a suspension of liquidation under the countervailing duty laws. Plaintiffs' view is that liquidation of an entry is a unitary event; an entry is either liquidated as to all duties or it is liquidated as to none. This is neither the current administrative view with regard to the imposition of additional duties, as is evidenced by the positions taken in this case, nor does it comport with antidumping and countervailing duty laws.

There are two general provisions for suspension of liquidation following preliminary affirmative determinations under the unfair trade practices law. For antidumping cases, the provision is found at 19 U.S.C. § 1673b (1982). For countervailing duty cases the provision is found at 19 U.S.C. § 1671b (1982 & Supp. III 1985). 19 U.S.C. § 1673d(c)(2) (1982) provides for the termination of the suspension upon a negative finding under the antidumping laws. The corresponding provision of the countervailing duty law is found at 19 U.S.C. § 1671d(c)(2) (1982). Furthermore, 19 U.S.C. § 1673e(b) (1982) calls for antidumping duties to be imposed under certain circumstances on entries the liquidation of which has been suspended under the antidumping duty laws. The corresponding countervailing duty provision is found at 19 U.S.C. § 1671e(b) (1982).

Throughout the statutory scheme, the provisions affecting suspension are kept separate. One of the reasons for this may have been to fulfill commitments made pursuant to international agreement. For example, the Agreement of Interpretation and Application of Articles VI, XVI, and XXIII of the General Agreement on Tariffs and Trade (commonly known as the GATT Subsidies Code), provides that: "The imposition of provisional measures shall be limited to as short a period as possible, not exceeding four months." General Agreement on Tariffs and Trade, April 12, 1979, art. 5, para. 3, 31 U.S.T. 513, 516, T.I.A.S. No. 9619, at 4, 1186 U.N.T.S. ——, ——. If a suspension following a preliminary determination under the antidumping laws could extend the suspension in countervailing duty cases it might conflict with this provision. There is a similar provision in the GATT antidumping code. General Agreement on Tariffs and Trade, April 12, 1979, art. 10, para. 3, 31 U.S.T. 4919, 4934, T.I.A.S. No. 9650, at 16, 1186 U.N.T.S. ——, ——. In fact, in *United States Steel Corporation v. United States*, 9 CIT ——, 618 F.Supp. 496 (1985), *appeal dismissed*, 792 F.2d 1101 (Fed.Cir.1986), which discussed the countervailing duty provision, the court treated the two potential suspensions separately. Although a suspension of liquidation of some entries was in effect under the antidumping laws, the court concluded that an overlapping countervailing duty suspension had ceased. Thus, in order to administer the laws in a reasonable manner and to steer clear of violation of international commitments, the suspensions are viewed as operating independently. Nothing in the language of the statute contradicts this, nor have the parties presented any evidence of a contrary administrative practice.[3] Therefore, in accordance with antidumping laws, the need to make depos-

---

2. Similarly, principles of administrative *res judicata* are inapplicable.

3. The court in *Ambassador Division of Florsheim Shoes v. United States*, 748 F.2d 1560, 1562 (Fed.Cir.1984) interprets 19 C.F.R. § 159.1 to mean "[no duties] can be liquidated until all of them are." Dual proceedings were not before the court in *Florsheim*, therefore, the court's statement cannot be viewed as resolving the issue presented here.

its and the provisional suspension of liquidation terminated upon the negative finding in May, 1985. *See* 19 U.S.C. § 1673d(c)(2). As a result, most past entries are no doubt liquidated without assessment of antidumping duties.[4] The court's opinion can have no effect on liquidated entries. This is not so as to future entries, nor potentially as to unliquidated past entries.

19 U.S.C. § 1516a(c) & (e) (1982) indicate that pending judicial review, unless such liquidation is enjoined by the court, entries are to be liquidated in accordance with the challenged administrative determination. Entries subject to the court's injunction and entries *made following* publication of notice of a contrary court opinion will be liquidated in accordance with the court's opinion. *See Melamine Chemicals v. United States*, 732 F.2d 924, 934 (Fed.Cir. 1984) and *Bomont Industries v. United States*, 10 CIT ——, 638 F.Supp. 1334 (1986). To date there is no injunction here, but a judicial decision which results in an affirmative finding, and therefore an antidumping duty order, will mandate deposits on future entries pursuant to 19 U.S.C. § 1673e(a)(3) (1982). There is some potential for conflict with the results of the second proceeding. As long as those results remain negative, they will have no effect and hence will present no conflict. If they become affirmative, any conflict in deposit rates will have to be resolved. This does not seem an insurmountable problem.

In the papers filed before the court, the parties have cited no statutory provision which leads to the conclusion that the first action must cease because of the existence of the second proceeding. In fact, the agencies allowed the two proceedings to continue simultaneously. Because this action may have an effect on future entries it is not moot.

ORDERED: Defendant's motion to dismiss as moot denied.

---

**4.** 19 U.S.C. § 1504 (1982 & Supp. III 1985) would have effected liquidation by operation of law within a year of the cessation of the suspension of liquidation.