**PPG INDUSTRIES, INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant,**

**Vitro Flotado, S.A. and Vidrio Plano De Mexico, S.A., Defendant–Intervenors.**

**Court No. 87–01–00035.**

United States Court of International Trade.

April 7, 1989.

Stewart and Stewart, Eugene L. Stewart and Terence P. Stewart, David Scott Nance, Geert De Prest, William A. Fennel, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Platte B. Moring, III, Washington, D.C., for defendant.

Brownstein, Zeidman & Schomer, Irwin P. Altschuler, David R. Amerine, Washington, D.C., for defendant-intervenors Vitro Flotado, S.A. and Vidrio Plano De Mexico, S.A.

## OPINION

CARMAN, Judge:

Plaintiff moves for judgment on the agency record pursuant to Rule 56.1 of the Rules of this Court, seeking reversal and a remand of the final results of an administrative review of a suspension agreement in *Unprocessed Float Glass From Mexico; Final Results of Countervailing Duty Administrative Review,* 51 Fed.Reg. 44,503 (Dec. 10, 1986). Defendant and defendant-intervenor oppose the motion and seek this Court's affirmance of the determination.

## BACKGROUND

The United States International Trade Administration, Department of Commerce (ITA or Commerce), published an agreement suspending a countervailing duty investigation on unprocessed float glass from Mexico. *Unprocessed Float Glass From Mexico; Suspension of Countervailing Duty Investigation,* 49 Fed.Reg. 7,264 (Feb. 28, 1984). On October 2, 1985 and February 28, 1986, plaintiff formally requested Commerce to conduct two separate administrative reviews [1] which Commerce completed in accordance with section 751 of the Tariff Act of 1930 as amended. 19 U.S.C. § 1675 (1982 & Supp. V 1987). Commerce upheld the suspension agreement in *Unprocessed Float Glass From Mexico; Final Results of Countervailing Duty Administrative Review,* 51 Fed.Reg. 44,503 (1986). It is from this determination that plaintiff seeks relief.

## CONTENTIONS OF THE PARTIES

Plaintiff contends as follows:

1. It should not be precluded from raising the issues concerning the countervailability of the FICORCA [2] and Mex-

1. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 50 Fed.Reg. 48,825 (Nov. 27, 1985); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 51 Fed.Reg. 8,863 (Mar. 14, 1986).

2. The Fund for Coverage of Exchange Risks ("FICORCA") is a trust fund set up by the Mexican Government and the Bank of Mexico operating through the country's credit institutions. All Mexican firms with registered debt in foreign currency and payable abroad to Mexican

ican Natural Gas Program in this case, since the decision in *PPG Industries Inc. v. United States,* 11 CIT ——, 662 F.Supp. 258 (1987) (*PPG I*), has no direct or collateral estoppel effect;

2. The FICORCA benefits program is countervailable under the principle adopted by this Court in *Cabot Corp. v. United States,* 9 CIT 489, 620 F.Supp. 722 (1985) (*Cabot I*), *appeal dismissed,* 788 F.2d 1539 (1986), *vacated in part,* 1986 WL 25437 by order dated November 20, 1986, and in *PPG I;*

3. The sale of natural gas by Mexico to Mexican float glass producers at artificially low prices should have been held countervailable;

4. The determinations by Commerce regarding the receipts of CEDIS[3] by members of the Vitro group were unsupported by substantial evidence and were otherwise contrary to law;

5. The ITA violated its statutory authority by its failure to investigate an allegation of subsidization through the lease of land on preferred terms that was supported by substantial evidence;

6. The ITA was required by law to terminate the suspension agreement covering imports of float glass since the agreement did not cover all the subsidies received by Mexican exporters, and could not be effectively monitored.

Brief in Support of Motion for Judgment on the Agency Record For Plaintiff PPG Industries, Inc. (Plaintiff's Brief) at 1–4.

Defendant, United States, contends that plaintiff is precluded from raising the issues concerning the countervailability of the FICORCA and natural gas programs urging arguments sounding in the legal theories of *stare decisis* and collateral estoppel. Defendant further urges that the determination of Commerce that the signatories of the suspension agreement did not receive CEDIS was supported by substantial evidence in the record and was otherwise in accordance with law. Lastly defendant asserts that plaintiffs provided insufficient information for Commerce to initiate an investigation of preferential land leases. Consequently, defendant maintains, Commerce was not obligated to terminate the suspension agreement covering float glass from Mexico. Defendant-intervenor generally joins in the contentions of the defendant.

## DISCUSSION

The standard which this Court must apply in reviewing a countervailing duty investigation is whether the investigation is supported by substantial evidence on the record or is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1982).

The interpretation of the laws administered by Commerce should be sustained if that interpretation is reasonable. *United States v. Zenith Radio Corp.,* 64 CCPA 130, C.A.D. 1195, 562 F.2d 1209 (1977), *aff'd,* 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed. 2d 337 (1978); *American Lamb Company v. United States,* 4 Fed.Cir. (T) 47, 785 F.2d 994 (1986). Furthermore, this Court should not reject the interpretation of a statute or regulation administered by the Agency unless it has compelling reasons so to do. *Wilson v. Turnage,* 791 F.2d 151, 155–56 (Fed.Cir.1986), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

The Supreme Court has held, with regard to judicial review of an agency's construction of a statute it administers, that absent direct Congressional instruction as to the precise question at issue, the question for the Court to decide is whether the agency's

credit institutions or to foreign financial entities or suppliers may purchase, at a controlled rate, the amount in dollars necessary to pay principal on the loan. All loans which are covered by the program must be long term or be restructured on a long term basis. The program was terminated December 20, 1982. Companies had until October 25, 1983 to register for the program. *See, PPG I,* 11 CIT at ——, 662 F.Supp. at 263–64.

3. A Certificado de Devolucion de Impuesto (CEDI) is a tax certificate issued by the Mexican government in an amount equal to a stated percentage of the value of exported merchandise. *See, Final Affirmative Countervailing Duty Determination; Ceramic Tile From Mexico and Countervailing Duty Order,* 47 Fed.Reg. 20,012, 20,012 (May 10, 1982).

interpretation is based upon a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Where the agency's interpretation of a statute represented a reasonable accommodation of manifestly competing interests, it was entitled to deference. *Id.* at 865, 104 S.Ct. at 2793. Since Commerce administers the trade laws and its implementing regulations, it is entitled to deference in its reasonable interpretations of those laws and regulations. This should not suggest the vacation of meaningful judicial review, but rather a recognition that administrative agencies must be permitted to effectively employ their administrative expertise in carrying out their legislative mandates.

The Supreme Court in *Chevron* stated in part:

> [A]rguments over policy that are advanced [by the parties] create the impression that [a party is] now waging in a judicial forum a specific policy battle which [was] lost in the agency ... but one which was never waged in the Congress. Such policy arguments are more properly addressed to legislators or administrators, not to judges.... [A]n agency to which Congress has delegated policymaking responsibilities may, within the limits of that delegation, properly rely upon the incumbent administration's views of wise policy to inform its judgments. While agencies are not directly accountable to the people, the Chief Executive is, and it is entirely appropriate for this political branch of the Government to make such policy choices—resolving the competing interests which Congress itself either inadvertently did not resolve, or intentionally left to be resolved by the agency charged with the administration of the statute in light of everyday realities.
>
> When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail.... The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: 'Our Constitution vests such responsibilities in the political branches.'

467 U.S. at 864–65, 104 S.Ct. at 2792–93, *quoting TVA v. Hill,* 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978).

While this Court must defer to an agency in its policy determinations, this Court must nevertheless follow its mandate from Congress to implement effective and meaningful judicial review. 19 U.S.C. § 1516a(b)(1)(B).

## ISSUE PRECLUSION

■ In considering such terms as res judicata, collateral estoppel and claim preclusion, the United States Court of Appeals for the Federal Circuit has adopted the following analysis:

> [W]e will be guided by the *Restatement (Second) of Judgments* (1982) which, in introductory note to § 13, provides the following basic statement:
>
> > The principal concepts developed in this Chapter are: merger—the extinguishment of a claim in a judgment for plaintiff (§ 18); bar—the extinguishment of a claim in a judgment for defendant (§ 19); and issue preclusion—the effect of the determination of an issue in another action between the parties on the same claim (direct estoppel) or a different claim (collateral estoppel) (§ 27). The term "res judicata" is here used in a broad sense as including all three of these concepts. When it is stated that "the rules of res judicata are applicable," it is meant that the rules as to the effect of a judgment as a merger or a bar or as a collateral or direct estoppel are applicable.

*Young Engineers, Inc. v. United States Int'l Trade Comm'n,* 2 Fed.Cir. (T) 9, 19, 721 F.2d 1305, 1314 (1983).[4]

4. In *Cabot Corp. v. United States,* 12 CIT ——, 694 F.Supp. 949, 953 n. 5 (1988) (*Cabot II*), the Court gives extensive discussion to the princi-

Defendant United States, citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), urges that plaintiff should be precluded from relitigating issues in a second action that were necessary for the outcome of a first action, even though the first action may have been based upon a different cause of action. Defendant's Memorandum in Opposition to Plaintiff's Motion For Judgment Upon the Agency Record (Defendant's Memorandum) at 12. Defendant points out that the Court of Appeals has identified four circumstances which must be present for issue preclusion to take effect.

> (i) the issue previously adjudicated is identical with that now presented,
>
> (ii) that the issue was "actually litigated" in the prior case,
>
> (iii) the previous determination of that issue was necessary to the end-decision then made, and
>
> (iv) the party precluded was fully represented by counsel in the prior action.

*Thomas v. GSA,* 794 F.2d 661, 664 (Fed.Cir. 1986).

Plaintiff, citing *Lone Star Steel Co. v. United States,* 10 CIT 712, 649 F.Supp. 75 (1986), urges issue preclusion should not apply. In *Lone Star,* plaintiff filed an antidumping petition regarding certain steel products. The United States International Trade Commission made a determination of no injury. Subsequently, the plaintiff filed another antidumping petition covering the same products with the United States International Trade Administration. The Court said:

> The basic issue ... is what is the effect of commencement of a second antidumping petition and resulting determination affecting the same product. One might theorize that every entry presents a separate cause of action. What is before the court for review, however, is agency action, not with regard to single entries, but with regard to imports of specific products from specific countries during a specific time period.... Because different time periods are under consideration, different determinations may result. An action with regard to one determination does not address the same *res* as does an action with regard to another determination.

10 CIT at 713–14, 649 F.Supp. at 76.

This Court agrees with the result in *Lone Star* where issue preclusion principles were held not to apply. This Court observes, nevertheless, the rule for issue preclusion is not whether the same res has been affected in a prior determination but whether the principles of issue preclusion apply. *Thomas v. GSA,* 794 F.2d 661, 664–65 (Fed.Cir.1986); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569–71 (Fed.Cir.1983).

The burden on the party seeking issue preclusion is and should be exacting. This is especially so in trade cases, since Congress has made specific provision for periodic administrative reviews in countervailing duty and dumping cases. (*See* 19 U.S.C. § 1675(a) (1982 & Supp. V 1987).) Since the agencies involved perform the function of expert finders of fact concerning different programs, different time frames, economic statistics and other factors in countervailing duty and dumping investigations as well as similar functions during periodic reviews, principles of issue preclusion should be carefully applied. To hold otherwise would have a chilling effect upon the administrative processes envisioned by the Congress.

This Court holds that there has not been a sufficient demonstration that the issues sought to be precluded as previously adjudicated are identical with the issues now presented. This Court holds that no direct or collateral estoppel effect applies that will preclude plaintiff from raising issues of the countervailability of the FICORCA and natural gas program benefits in this case.

## FICORCA

Commerce indicated in its final determination that as in the preliminary results of this review, it had reviewed the information presented by PPG and contin-

ples of collateral estoppel, stare decisis, law of the case, res judicata and full faith and credit.

ued to uphold its determination that the FICORCA program was not countervailable. 51 Fed.Reg. at 44,504. Since Commerce adopted the rationale used in the preliminary results, it is useful to examine what was said there:

> On December 20, 1982, in response to the balance-of-payments crisis and the deterioration of domestic business conditions that Mexico suffered in late 1982, the Government of Mexico and the Banco de Mexico established the Trust Fund for Coverage of Risks ('FICORCA'), which operates through the country's credit institutions. All Mexican firms with registered debt in foreign currency and payable abroad to Mexican credit institutions or to foreign financial entities or suppliers may purchase, at a controlled rate, the amount in dollars necessary to pay principal on that debt. All loans covered by the program must be long-term or restructured on a long-term basis. The program applied to all loans taken out as of December 20, 1982, and companies had until October 25, 1983 to register for the program. We verified that both Vitro Flotado and Vidrio Plano participated in the FICORCA program during the period of review.
>
> In the final affirmative countervailing duty determination in this case (40 FR 23097, June 4, 1984), we determined that the FICORCA program was available to all Mexican firms with foreign indebtedness and that it was not targeted to a *specific industry or enterprise, group of industries or enterprises,* or to companies located in specific regions. We also found that FICORCA was not tied in any way to exports. Therefore, we determined that this program was not countervailable.
>
> In the course of this review, PPG has requested that the department reevaluate the FICORCA program in light of new information available. Based on this new information, PPG asserts that FICORCA is targeted to certain companies or industries within Mexico and therefore is countervailable. By limiting eligibility to companies with foreign debt incurred before December 20, 1982, the petitioner contends that the Mexican government knew exactly which companies would be eligible for FICORCA, indicating that the Mexican government targeted those specific companies. Further, based on the eligibility requirements, PPG contends that only a small portion of corporations and businesses in Mexico could participate in FICORCA.
>
> We have reviewed the information presented during the original investigation of this case and the information submitted during this review. While the new information presented by PPG does contain new or updated statistics on the number of potential and actual beneficiaries, we believe that this new information does not change the Department's understanding of the operation of the program or the reasoning that led to our decision in the final determination. We knew at that time that the program applied only to foreign debt and to debt incurred before a specific date. We also knew that the Mexican government monitored foreign debt commitments, and therefore, could have predicted participants in FICORCA. However, the Mexican government did not restrict refinancing under FICORCA to specific industries or locations.
>
> We do not consider a domestic program that does not restrict participation to specific industries or locations and that in fact is used by a wide variety of industries in various locations to be specifically provided. Therefore, we continue to uphold our determination that the FICORCA program is not provided to a *specific enterprise or industry,* or group of enterprises or industries, and that the program is not countervailable.

*Unprocessed Float Glass From Mexico; Preliminary Results of Countervailing Duty Administrative Review,* 51 Fed.Reg. 37,319, 37,320–21 (Oct. 21, 1986) (Emphasis added).

Plaintiff contends that the ITA failed to apply the "competitive advantage" rule as enunciated in *Cabot I,* 9 CIT 489, 620 F.Supp. 722, and should have found the FICORCA program was countervailable.

This Court rejects the contention of the plaintiff. There is no such rule as the "*Cabot* rule." Commerce must apply the statutory test as to the meaning of a subsidy as set forth at 19 U.S.C. § 1677(5) (1982). Only after having considered all of the relevant factors on a case-by-case basis and applying and analyzing those factors in light of the statutory rule, can Commerce determine if a program is countervailable. *Cabot II,* 12 CIT at ——, 694 F.Supp. at 958; *PPG I,* 11 CIT at ——, 662 F.Supp. at 266; *Can-Am Corp. v. United States,* 11 CIT ——, 664 F.Supp. 1444, 1448 (1987); *Cabot I,* 9 CIT 489, 620 F.Supp. 722. This Court holds, based on the record, the determination by the ITA was reasonable and supported by substantial evidence on the record and was otherwise in accordance with the law.

NATURAL GAS

During the administrative review of the suspension agreement, plaintiff asked the ITA to find that the sale of natural gas by the Mexican government to Vitro Flotado and Vidrio Plano at government controlled prices conferred a countervailable benefit. They contended the competitive advantage rule in *Cabot I* should control. Plaintiff's Brief at 44–45; Administrative Record (A.R.) 28 at 3, 58 at 17. As set forth above, the agency is required to apply the statutory rule, not the so-called *Cabot* test. Since the ITA verified that Vidrio Plano and Vitro Flotado paid the published price for natural gas that was to be employed by all industrial users in Mexico during the period investigated (A.R. 65 at 12, 18), the determination by the ITA that Vidrio Plano and Vitro Flotado did not receive countervailable benefits by purchasing natural gas was reasonable and supported by substantial evidence in the record and was otherwise in accordance with law.

CEDIS

Plaintiff contends the determination by the ITA that members of the Vitro group were in receipt of CEDIS was unsupported by substantial evidence and was otherwise contrary to law. In the administrative review which is the subject of this action, plaintiff questioned whether the CEDI program had been suspended and if it was accurate that no benefits were being received by domestic Mexican companies. Plaintiff's Brief at 46; A.R. 36.

The ITA questionnaire was issued to determine whether or not Vitro Flotado or Vidrio Plano received countervailable benefits upon the manufacture or exportation of float glass to the United States. A.R. 39. The overall investigation concerning CEDIS and extra CEDIS was extensive. *See e.g.,* A.R. 15 at 2–5, 36 at 2–7, 52 at 1–3, 65 at 4; Confidential Administrative Record (C.A.R.) 9 at 3–4, 14 at 12. Based on its investigation the ITA found that the signatories to the suspension agreement complied with the terms of the agreement during the period of the review. The parties were not receiving CEDIS or extra CEDIS that were countervailable. 51 Fed.Reg. at 44,504. Plaintiffs are understandably not satisfied with the result. This Court can nevertheless not treat this matter as a trial *de novo.* After having examined the record this Court holds the determination of the ITA is reasonable and supported by substantial evidence in the record and is otherwise in accordance with law.

ITA DETERMINATION NOT TO INVESTIGATE LEASE OF LAND

Plaintiff contends it provided the ITA with 1984 financial statements that allegedly revealed that Vidrio de Plano de Mexico S.A. had been leasing land from the Mexican government at what appeared to be a nominal price. Plaintiff's Brief at 68. Plaintiff requested the ITA to investigate the lease to determine if it was made on non-commercial terms. *Id.* at 68–69; A.R. 36 at 15. Plaintiff alleged an amount it believed was the annual rent but provided no information as to how much land might be involved, the type of lease or the use to which the land had been put. The ITA indicated nevertheless it would investigate the matter during the course of the next review. 51 Fed.Reg. at 44,504.

This Court holds the determination by the ITA was reasonable, supported by substantial evidence in the record and otherwise in accordance with the law.

Were this Court to hold otherwise, every time a party wanted to stop or impede a review, it could simply make a skeleton-type allegation of a possible countervailable subsidy. Presumably the agency would have to stop everything until it had disposed of that allegation. The administration of the agency would then be turned over to the whim of the parties and the agency would no longer be able to properly function as envisioned by Congress.

This Court grants the motion of defendant and defendant-intervenor and affirms the determination. The motion of plaintiff is denied and this action is dismissed.

ORDER

Upon reading and considering plaintiff's motion for judgment upon the agency record, and all opposition thereto, and upon reading and filing all other papers and proceedings herein, it is hereby

ORDERED that plaintiff's motion for judgment upon the agency record be, and it is hereby, denied; and it is further

ORDERED that the final results of the administrative review of the suspension agreement covering *Unprocessed Float Glass from Mexico; Final Results of Countervailing Duty Administrative Review*, 51 Fed.Reg. 44,503 (Dec. 10, 1986) is sustained in all respects. This action is hereby dismissed.