**Slip Op. 99-47**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
E.I. DUPONT DE NEMOURS & COMPANY,       :
                                        :  Court No. 97-08-01335
            Plaintiff,                  :
                                        :
        v.                              :
                                        :
THE UNITED STATES,                      :
                                        :
            Defendant,                  :
                                        :
        and                             :
                                        :
ARAMID PRODUCTS V.o.F. and              :
AKZO NOBEL ARAMID PRODUCTS INC.,        :
                                        :
            Defendant-Intervenors.      :
_____:

[ITA determination remanded upon consent.]

                              Dated:  June 2, 1999

    Wilmer, Cutler & Pickering (John D. Greenwald, Ronald I. Meltzer, and John A. Trenor) for plaintiff.

    David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Mark L. Josephs), Mildred E. Steward, Office of the General Counsel, United States Department of Commerce, of counsel, for defendant.

    Adduci, Mastriani & Schaumberg, L.L.P (Barbara A. Murphy, Tom M. Schaumberg, and Gregory C. Anthes) for defendant-intervenors.

## OPINION

    **RESTANI, Judge:**  This matter is before the court on

plaintiff, E.I. DuPont De Nemours & Company's ("DuPont"), motion

for judgment on the agency record pursuant to USCIT R. 56.2.

Plaintiff, the domestic party petitioner before the Department of

Commerce, challenges Commerce's antidumping duty determination in

the second administrative review of its order on aramid fiber

from the Netherlands.  See <u>Aramid Fiber Formed of Poly Para-</u>

<u>Phenylene Terephthalamide from the Netherlands</u>, 62 Fed. Reg.

38,058 (Dep't Commerce 1997) [hereinafter <u>Final Results</u>].

**Background**

During the original less-than-fair-value ("LTFV")

investigation, a wholly-owned subsidiary of the Dutch

corporation, Akzo Nobel NV ("Akzo"), increased its equity holding

in Aramid Products V.o.F. ("Aramid")[1] from 50 to 95 percent.  See

<u>Aramid Fiber Formed of Poly-Phenylene Terephthalamide from the</u>

<u>Netherlands</u>, 59 Fed. Reg. at 23,688.  Commerce did not consider

the corporate reorganization for purposes of the LTFV

investigation because the reorganization took place after the

period of investigation ended.  <u>Id.</u>  Commerce, however, accepted

Aramid's and Akzo's corporate restructuring for purposes of the

---

[1]  Aramid is a Dutch producer of PPD-T aramid fiber.  <u>Aramid</u>
<u>Fiber Formed of Poly-Phenylene Terephthalamide from the</u>
<u>Netherlands</u>, 59 Fed. Reg. 23,684, 23,687 (Dep't Commerce 1994)
(LTFV final determination).  Akzo Nobel Aramid Products Inc. is
Akzo's U.S. selling arm.  <u>Commerce's Verification Report</u> (Feb.
21, 1997), at 2, C.R. Doc. 27, Def.'s App., Tab 9, at 2
[hereinafter <u>Verification Report</u>].  The U.S. parent company is
Akzo Nobel, Inc., which is wholly owned by Akzo Nobel NV.  <u>Id.</u>

first administrative review.  See Aramid Fiber Formed of Poly

Para-Phenylene Terephthalamide from the Netherlands, 61 Fed. Reg.

51,406, 51,407 (Dep't Commerce 1996) (final results of

antidumping admin. rev.) [hereinafter First Review].  Commerce

states that it took this approach because the first

administrative review covered the period following consolidation.

Gov't Br. at 3.

     During the first administrative review, having recognized

the corporate restructuring, Commerce, for purposes of cost of

production ("COP"), calculated "the respondent's net interest

expense based on the financing expenses incurred on behalf of the

consolidated group of companies to which the respondent belongs."

First Review, 61 Fed. Reg. at 51,407.  Commerce utilized this

methodology because of Akzo's controlling interest in Aramid and

the fungible nature of debt and equity.  Id.  The court upheld

this approach in DuPont's challenge to Commerce's first

administrative review.  E.I. DuPont de Nemours & Co. v. United

States, No. 96-11-02509, 1998 WL 42598, *3-5 (Ct. Int'l Trade

Jan. 29, 1998) ("E.I. DuPont I").

     Commerce followed the approach taken in the first

administrative review in calculating Aramid's financing expenses

in the second administrative review covering the period June 1,

1995, through May 31, 1996.  See Final Results, 62 Fed. Reg. at

38,060.  During the second review, Commerce requested that Aramid report its corporate structure and affiliations, Commerce's Questionnaire (Aug. 20, 1996), at A-3, P.R. Doc. 4, Def.'s App., Tab 1, at 4 [hereinafter Commerce's Questionnaire], in order to confirm that Aramid's corporate structure remained unchanged from the first administrative review, Gov't Br. at 4.  Aramid responded that this structure had not changed, indicating that Akzo owned a 95 percent interest in the producing company. Aramid's Questionnaire Section A Response (Sept. 20, 1996), at 6, P.R. Doc. 10, Def.'s App., Tab 2, at 4 [hereinafter Aramid's Section A].

As part of its request for information relating to U.S. sales,[2] Commerce requested that Aramid report financing expenses as part of indirect selling expenses ("ISE").  See Commerce's Questionnaire, Def.'s App., Tab 1, at 6.  In response, Aramid reported financing expenses and explained that the interest expenses component of the ISE was based upon information taken from Akzo's consolidated financial statements.  Aramid's Questionnaire Sections B-D Response (Oct. 25, 1996), at 111-112, C.R. Doc. 2, Def.'s App., Tab 3, at 3-4 [hereinafter Aramid's

---

[2]  To determine the dumping margin, U.S. sales prices are compared to normal value, which may be based on home market sales, third country sales, or constructed value ("CV"), which reflects COP.  19 U.S.C. § 1677b (1994).

Sections B-D].  Similarly, Commerce requested that Aramid report

its financial interest expenses related to COP.  See Commerce's

Questionnaire, at D-18, Def.'s App., Tab 1, at 7.  In response,

Aramid reported the net interest expenses associated with COP.

Aramid's Sections B-D, at D-18, Def.'s App., Tab 3, at 17.  As

with the ISE, the interest expense component of COP was based

upon the consolidated financial statements of Akzo.  Id.[3]

Aramid submitted Akzo's consolidated financial statements as

part of its response to the original questionnaire.  See

generally Aramid's Section A, P.R. Doc. 10, Def.'s App., Tab 2.

These statements contained the financing costs incurred by Akzo

on behalf of all of its subsidiaries.  See id. at A-15 to A-16,

Def.'s App., Tab 2, at 24-67.  Commerce subsequently issued a

supplemental questionnaire requesting additional financing

information.  See Commerce's Supplemental Questionnaire (Nov. 19,

1996), at 1-8, C.R. Doc. 8, Def.'s App., Tab 4, at 3-10.

Commerce conducted verification of the costs and expenses that

Aramid reported in its original and supplemental questionnaires

in January and February of 1997.  See Commerce's Verification

_____

[3] For U.S. ISE, Commerce used the consolidated financial
data of Akzo Nobel, Inc., the U.S. parent company.  See
Verification Report, at Ex. 24, Def.'s App., Tab 9, at 19-20.
For COP, Commerce used the consolidated financial data of Akzo
Nobel, NV, the Dutch parent company of producer Aramid.  Gov't
Br. at 5 n.2, see also Aramid's Section B-D Response, at 161-162,
Def.'s App., Tab 3, at 13-14.

Outline (Jan. 13, 1997), at 1, C.R. Doc. 13, Def.'s App., Tab 5, at 1.

In its first administrative review, Commerce isolated the various parts of Akzo's amortized goodwill and included within COP certain depreciation expenses related to devalued assets, but declined to account for the residual goodwill arising from Akzo's corporate restructuring.  See E.I. DuPont I, 1998 WL 42598, at *5-6.  This approach was upheld by the court.  Id. at *8-9.

Commerce followed this approach in its treatment of Akzo's goodwill in the second review.  Final Results, 62 Fed. Reg. at 38,063.  In response to Commerce's section D questionnaire, Aramid indicated that it was reporting COP based upon the actual costs incurred during the POR.  Aramid's Sections B-D, at 128, 139-140, Def.'s App., Tab 3, at 7, 9-10.  Aramid also stated in this response that it was following the depreciation methodology used by Commerce in the first administrative review as part of Commerce's breakdown of goodwill.  Id. at 128 n.26, Def.'s App., Tab 3, at 7 n.26.  Accordingly, Aramid's reported cost of manufacturing ("COM") included the part of depreciation associated with the revaluation of Aramid's assets that occurred as part of the corporate restructuring.  Id.

Commerce verified Aramid's COP and CV from January 27, through January 31, 1997.  Commerce's COP/CV Verification Report

(Feb. 21, 1997), at 1, C.R. Doc. 26, Def.'s App., Tab 8, at 1.
During verification, Commerce confirmed to its satisfaction that
Aramid had made a proper adjustment for depreciation associated
with the revaluation of certain assets.  Gov't Br. at 10; see
also Exhibit 27 to Verification Report (Feb. 21, 1997), C.R. Doc.
26, Def.'s App., Tab 10.  Commerce also verified that Aramid had
included that portion of goodwill appropriately associated with
certain assets used in the cost of production.  Gov't Br. at 10
(relying on figures found in Exhibits 36 and 37 to Verification
Report (Feb. 21, 1997), C.R. Doc. 26, Def.'s App., Tab 11.).  The
final calculated dumping margin was 26.25 percent for Aramid's
merchandise.  Final Results, 62 Fed. Reg. at 38,064.

The issues raised by DuPont are: (1) whether Commerce erred
in using Akzo Nobel, Inc.'s consolidated financial data to
calculate the financial expense component of Aramid's U.S. ISE,
(2) whether Commerce erred in using Akzo Nobel NV's consolidated
interest expenses in calculating Aramid's COP, and (3) whether
Commerce erred in excluding residual goodwill expenses arising
from the earlier corporate restructuring from Aramid's COP.[4]

---

[4]  All parties are agreed that remand is necessary to
correct Commerce's use of constructed value when suitable above-
cost home market sales were available for contemporaneous price
to price comparisons.  Accordingly, remand is permitted for this
purpose.

**Jurisdiction and Standard of Review**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (1994).  In reviewing final determinations in antidumping duty investigations, the court will hold unlawful those agency determinations which are unsupported by substantial evidence on the record, or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i) (1994).

**Discussion**

DuPont asserts that remand is necessary as to the first issue involving the use of financial data from Akzo Nobel, Inc., the U.S. parent of Aramid's U.S. selling arm, for Aramid's  U.S. ISE calculation, because Commerce did not address in the Final Results DuPont's arguments that the subsidiary's data should be used.  Commerce's reasoning with regard to this issue is readily discernable and it fully disposes of DuPont's arguments.  A court may uphold an agency decision if the agency's path is reasonably discernable.  Ceramica Regiomontana, S.A. v. United States, 810 F.2d 1137, 1139 (Fed. Cir. 1987) (citing cases).  Commerce's reasoning is exactly the same as that supporting its decision to use consolidated financial information of the foreign parent to compute COP of the Dutch subsidiary.  See Final Results, 62 Fed. Reg. at 38,060.  In sum, Commerce determined that the parent corporations and not the subsidiaries controlled financial

structuring and their data provided the most accurate measures of financial costs.  Remand to obtain further explanation is not necessary.

The remainder of DuPont's arguments as to the three issues before the court, and the responses thereto are essentially those that were presented in E.I. DuPont I.  Defendant-intervenor Aramid argues that the court should not consider these issues further, should apply collateral estoppel principles to this case, and should find that DuPont is precluded from raising the issues addressed in E.I. DuPont I.  The Court of Appeals for the Federal Circuit requires that the following four conditions be met for issue preclusion to apply:

> (1) the issue previously adjudicated is identical with that now presented;
>
> (2) the issue was "actually litigated" in the prior case;
>
> (3) the previous determination of that issue was necessary to the end-decision then made; and
>
> (4) the party precluded was fully represented in the prior action.

Thomas v. General Servs. Admin., 794 F.2d 661, 664 (Fed. Cir. 1986).

Although the parties and legal issues are the same, and the issues were necessarily litigated and decided in E.I. DuPont I, Commerce's decision is based on the facts and arguments presented

as to this review period.  That is, although the methodologies at
issue, which were found to be permissible under the statute, are
the same, the calculations are different.  Also, DuPont
specifically challenged ISE in the second, but not in the first,
review, and Commerce was required to reassess in the second
review the corporate financing structure to determine if it had
been altered from the first period of review.  Further, Commerce
reconsidered all of DuPont's arguments and was not prohibited
from taking other reasonable approaches.  DuPont was not
precluded from trying to convince Commerce to change its
methodologies.  Thus, it appears that DuPont should not be
precluded from, at least, having the court review Commerce's
determination not to change its methodologies in the second
review.[5]

     Moreover, DuPont notes, neither this court, nor the Court of
Appeals for the Federal Circuit, has found issue preclusion
applicable in a trade case.  In PPG Indus., Inc. v. United
States, 978 F.2d 1232, 1239 (Fed. Cir. 1992), the court rejected

_____

     [5] DuPont is incorrect, however, in assuming the court fully
considered the preclusion issue in denying its motion for
extension of time to file appeal of the court's decision as to
the first review.  E.I. DuPont De Nemours & Co. v. United States,
15 F. Supp.2d 859 (Ct. Int'l Trade 1998).  The parties did not
discuss the issue and the court's decision did not rise or fall
on DuPont's ability or inability to pursue the same issues in the
future.

the application of issue preclusion, observing that the factual

record was different, including the fact that the time period in

review was different.  Even if this case is distinguishable from

PPG, it is still far from clear that issue preclusion should be

applied to trade cases.[6]  A better approach might be to apply the

type of stare decisis principles applied by the court in customs

classification cases.

Res judicata principles (including issue preclusion)[7] do not

apply in customs classification cases, unless the entries at

issue are identical.  United States v. Stone & Downer Co., 274

U.S. 225, 235-37 (1927); United States v. Boone, 38 C.C.P.A. 89,

94, 188 F.2d 808, 810 (1951) ("doctrine [of res judicata] does

---

[6]  As stated by this court in PPG Indus., Inc. v. United
States, 13 CIT 297, 302, 712 F. Supp. 195, 199 (1989),

> The burden on the party seeking issue preclusion is and
> should be exacting.  This is especially so in trade cases,
> since Congress has made specific provision for periodic
> administrative reviews in countervailing duty and dumping
> cases . . . Since the agencies involved perform the function
> of expert finders of fact concerning different programs,
> different time frames, economic statistics and other factors
> in countervailing duty and dumping investigations as well as
> similar functions during periodic reviews, principles of
> issue preclusion should be carefully applied.  To hold
> otherwise would have a chilling effect upon the
> administrative processes envisioned by the Congress.

[7]  In Young Eng'rs, Inc. v. United States, 2 Fed. Cir. (T)
9, 19, 721 F.2d 1305, 1314 (1983), the Court of Appeals adopted
the view of res judicata as stated in the Restatement (Second) of
Judgments (1984), that the term is a broad one, which includes
the concepts of merger, bar, and issue preclusion.

not apply in cases involving classifications of imported merchandise."). Certain principles of stare decisis, however, do apply. United States v. Mercantil Distribuidora, S.A., 45 C.C.P.A. 20, 23-24 (1957). Prior decisions with regard to classification of the same merchandise, unless clearly erroneous, govern as to other entries of the same goods. Id. ("public policy of putting an end to litigation and of not reopening questions which have been decided is a sound one, subject only to the qualification that clear error should not be perpetuated."). The doctrine does not apply if new evidence as to proper classification is presented. Heraeus-Amersil, Inc. v. United States, 13 CIT 764, 766 (1989) (citing Schott Optical Glass Inc. v. United States, 3 Fed. Cir. (T) 35, 36, 750 F.2d 62, 64 (1984)).

This was the approach advocated by the court on issues of statutory interpretation in trade cases in American Lamb Co. v. United States, 9 CIT 260, 262, 611 F. Supp. 979, 981 ("stare decisis counsels the court to follow the prior decisions."), rev'd on other grounds, 4 Fed. Cir. (T) 47, 785 F.2d 994 (1986). This makes sense even for methodological issues. While technically the factual basis may be different because different entries during different time periods are involved, if the

determinative facts and legal arguments do not vary, judicial

economy is served by application of <u>stare decisis</u> principles.

In any case, because the precedential value of prior

judicial determinations of this court is not clear in trade

cases, even where the parties are the same and the operative

facts do not differ in any significant way, it is at least in the

interest of judicial economy under current issue preclusion

precedent for the court to consider these issues fully once

more.[8]

The court has reviewed the legal arguments presented by the

parties and the relevant facts of this review.  They do not

differ in any significant way from those of <u>E.I. DuPont I</u>, as the

parties seem to acknowledge.  Having fully considered the issues

once again, the court arrives at the same conclusions.

Accordingly, the court adopts the reasoning of <u>E.I. DuPont I</u> for

purposes of this opinion and incorporates it by reference herein.

Thus, the court sustains Commerce's determination, except that

remand upon consent is ordered to consider suitable home market

sales for contemporaneous price comparison purposes.

---

[8] Even if <u>stare decisis</u> principles applied, under customs
practice with respect to a decision of the same level, that is,
another CIT decision, the court would review the matter for clear
error.  <u>See</u> <u>Mercantil</u>, 45 C.C.P.A. at 23-4.

Commerce shall issue amended results within 45 days.  Any objections to the new price comparisons shall be filed within 11 days thereof.  Responses are due within 7 days thereof.  If no objections are timely filed, defendant shall present a final proposed judgment to the court on the 15th day following its amended results.

_____
Jane A. Restani
JUDGE


Dated: New York, New York

This 2d day of June, 1999.