**GEORGETOWN STEEL CORP., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**and**

**Saudi Iron and Steel Company (Hadeed), Defendant–Intervenor.**

**SAUDI IRON AND STEEL COMPANY (Hadeed), Plaintiff,**

v.

**UNITED STATES, Defendant,**

**and**

**Georgetown Steel Corp., et al., Defendants–Intervenors.**

**Court No. 91–07–00496.**

United States Court of International Trade.

Dec. 23, 1992.

Wiley, Rein & Fielding, Charles Owen Verrill, Jr., Eileen P. Bradner, John R. Shane, Washington, DC, for Georgetown Steel Corp., et al.

Miller & Chevalier, Chartered, Homer E. Moyer, Jr., Stuart E. Benson, Catherine Curtiss, Kathryn Bucher, Claire S. Wellington, Washington, DC, for Saudi Iron and Steel Co. Hadeed.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, A. David Lafer, Dean A. Pinkert, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Before: DiCARLO, Chief Judge.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Domestic producers, Georgetown Steel Corp., North Star Steel Texas, Inc., and Raritan River Steel Co., and foreign manufacturer, Saudi Iron and Steel Company (Hadeed), filed actions challenging the final results of countervailing duty administrative review in *Carbon Steel Wire Rod from Saudi Arabia,* which found the countervailable bounty or grant to be at a *de minimis* level during the period of review. *See* 56 Fed.Reg. 26,652 (Dep't Comm.1991). The actions were consolidated, and plaintiffs move pursuant to Rule 56.1 of the Rules of this court for judgment on the agency record. The court has jurisdiction under 19 U.S.C. §§ 1516a(a)(2)(A) & (B)(iii) (1988) and 28 U.S.C. § 1581(c) (1988).

Plaintiffs raise two issues: (1) whether the methodology used by the Department of Commerce calculating the bounty or grant conferred by the Saudi government's Public Investment Fund (PIF) was supported by substantial evidence; and (2) whether Hadeed's challenge requires the court to render an advisory opinion when countervailable bounty or grant was at *de minimis* level during the review period.

### Background

The government of Saudi Arabia provides the PIF loans to finance enterprises in which the Saudi government has some

share of the equity. R. 316 (Verification Report 9). Commerce found in 1986 that Hadeed received countervailable bounty or grant and imposed countervailing duty of 5.48% *ad valorem*. *Countervailing Duty Order; Carbon Steel Wire Rod From Saudi Arabia*, 51 Fed.Reg. 4,206 (Dep't Comm.1986). Commerce conducted an administrative review pursuant to 19 U.S.C. § 1675 (1988) for the 1987 calendar year and found that the PIF loan program conferred benefits to a specific group of enterprises and that the bounty or grant was 0.43% *ad valorem*. Because the rate of countervailing duty was at *de minimis* level, *see* 19 C.F.R. § 355.7 (1992), Commerce did not impose a countervailing duty on merchandise entered during 1987, and waived cash deposits of estimated countervailing duties until publication of the final results of the next administrative review. *See* 56 Fed.Reg. at 26,655–56.

### Discussion

The court shall hold unlawful any determination which is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Matsushita Elec. Indus. Co., Ltd. v. United States*, 3 Fed. Cir. (T) 44, 51, 750 F.2d 927, 933 (1984) (citations omitted).

1. Whether Commerce's methodology of calculating bounty or grant was supported by substantial evidence on the record.

█ In calculating bounty or grant, Commerce constructed a composite benchmark to determine what Hadeed would have had to pay for a comparable loan in the absence of the PIF loans. 56 Fed.Reg. at 26,655. The methodology was the same as that used in the original investigation. *See Saudi Iron and Steel Co. v. United States*, 11 CIT 880, 675 F.Supp. 1362 (1987). Commerce found that the PIF loans provided sixty percent of the Hadeed's total project cost. As a comparable long-term loan available in Saudi Arabia, Commerce used another government loan program, Saudi Industrial Development Fund (SIDF). The SIDF provided loans to private industries and the loans were extended for up to fifty percent of the cost of the project. Consequently, the composite benchmark comprised five sixths of the flat two percent rate of interest applied to the SIDF loans and one sixth of Hadeed's average commercial borrowing rates during the review period.

Domestic producers claim that Commerce's composite benchmark is not supported by substantial evidence because it was not representative of what Hadeed would have had to pay in the absence of PIF financing. Since Hadeed's questionnaire response stated that there is "a cap of SR 400 million per project", R. 90 (Hadeed's questionnaire response 35), the domestic producers argue that the portion of the SIDF loans in the benchmark exceeded the 400 million Saudi Riyals (SR) cap imposed on the SIDF loans. They contend that the SIDF component of the composite benchmark should have been limited to SR 400 million, and the remainder should have been based on the interest rates of commercial bank loans. If this methodology was used, the total bounty or grant would have reached a level of 4.7% *ad valorem* exceeding the *de minimis* 0.5% level.

First, the government and Hadeed deny the SIDF loan program has a SR 400 million cap. The Loans Division Manager of the SIDF stated while the loans had never been extended for "more than 400 million *at one time*", the SIDF extended loans for more than SR 400 million to several companies. R. 324 (Verification Report 17) (emphasis added). Given the conflicting statements between Hadeed which is not a recipient of the SIDF and the Saudi government official who administers the SIDF program, the court finds it reasonable for Commerce to rely on the statement by the

official. There is more than "mere scintilla" of evidence to support Commerce's finding that SR 400 million cap on the SIDF loans was not enforced.

Second, the government and Hadeed contend that, assuming arguendo SR 400 million cap existed, domestic producers' proposed benchmark using a larger proportion of commercial bank loan rates is unrepresentative of what Hadeed would have had to pay in the absence of the PIF financing. They argue that commercial lending is not available in Saudi Arabia for the amount of the fifteen-year PIF loans Hadeed received. The record shows that Saudi commercial banks provide primarily short-term loans of one year or less. Medium-term loans by commercial banks, which extend from one to eight years, are restricted in practice to no more than SR 300 million to 400 million. R. 326 (Verification Report 19). The government and Hadeed argue because there also exists a cap of SR 300 million to 400 million for mid-term commercial lending in Saudi Arabia, the domestic producers' suggested benchmark using a larger proportion of commercial bank loan rates would not represent what Hadeed would have had to pay. Commerce also found that Saudi commercial banks do very little long-term lending because the payment of interest is unenforceable in a Saudi court. *See* 56 Fed.Reg. at 26,655.

Domestic producers claim that the composite benchmark they suggested and the one Commerce used are subject to the same duration and funding limitations. *See Georgetown's Reply Br.* at 6. If that is the case, "[t]he decision to select a particular methodology rests solely within Commerce's sound discretion. As long as there is 'substantial evidence on the record' to support the choice, the court will sustain the methodology chosen by Commerce." *Hercules, Inc. v. United States,* 11 CIT 710, 726, 673 F.Supp. 454, 469 (1987); *see also National Knitwear & Sportswear Ass'n v. United States,* 15 CIT ——, ——, 779 F.Supp. 1364, 1369 (1991). If similar limitations were imposed on both methodologies, Commerce's choice of the composite benchmark was within its discretion.

Domestic producers further contend that Hadeed could have obtained internationally syndicated commercial bank loans even if commercial lending resources are limited in Saudi Arabia. There is, however, no evidence on the record to support this contention. The mere fact that Saudi commercial bank loan rates are set at the Jeddah Interbank Offering Rate (JIBOR) or the Bahrain Interbank Offering Rate (BIBOR), R. 326, does not prove that internationally syndicated bank loans were available to Hadeed during the period of investigation in the absence of the PIF loans. The court, therefore, affirms Commerce's methodology of calculating the grant or bounty conferred on Hadeed.

2. Whether Hadeed's challenge to Commerce's determination requires the court to render an advisory opinion.

■ Despite the finding that the countervailable bounty or grant was at *de minimis* level during the review period, Hadeed filed an action challenging Commerce's determination that the PIF loans were limited to a specific group of enterprises so that they were countervailable.

The court may not render an advisory opinion when there is no case or controversy. *See* U.S. Const. art. III, § 2. "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (citations omitted). The duty of the court is "to decide actual controversies by a judgment which can be carried into effect, and not to give opinion upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895).

Commerce decided not to assess countervailing duties when the rate of duties to be

**322**

imposed is *de minimis* because the potential benefits to domestic industries are outweighed by the gains in productivity and efficiency provided by a *de minimis* rule. *Antidumping and Countervailing Duties; De Minimis Dumping Margins and De Minimis Subsidies,* 52 Fed.Reg. 30,660–62. (Dep't Comm.1987) (final rule). Accordingly, Hadeed is not required to pay countervailing duty for the entries during the review period nor cash deposits for estimated countervailing duties for later entries, until the publication of an administrative review that finds more than *de minimis* subsidy.

The court's decision on whether the PIF loan program is limited to a specific group of enterprises would be an advisory opinion because it will not affect Hadeed's legal interest concerning the entries during this review period. Because Hadeed is not required to pay any countervailing duties nor cash deposits, there is no remedy to be carried into effect for Hadeed even if the court holds in its favor.

Hadeed claims that the specificity issue is a continuing controversy. However, Commerce does not automatically determine the PIF loan program is countervailable in subsequent administrative reviews. Each of Commerce's subsequent determinations [1] must be supported by the record obtained during the course of respective administrative proceeding. *See* 19 U.S.C. § 1516a(b)(2)(A)(i) (1988) (defining "record for review"). Regardless of the court's decision on this issue for the 1987 review, Hadeed is still free to pursue the same issue in a judicial review challenging the affirmative determination in the subsequent administrative reviews. *See PPG Indus., Inc. v. United States,* 13 CIT 297, 302, 712 F.Supp. 195, 199 (1989) (restricting the application of issue preclusion in trade cases because of the nature of periodic administrative review in countervailing

duty cases). The court will not render an advisory opinion.

### Conclusion

The court affirms Commerce's determination in the 1987 administrative review of carbon steel wire rod from Saudi Arabia.

---

**1.** Commerce found net bounty or grant to be at *de minimis* level in the second, third, and fourth administrative reviews covering the calendar years 1988 to 1990. *See Carbon Steel Wire Rod From Saudi Arabia,* 56 Fed.Reg. 48,158 (Dep't Comm.1991); *Carbon Steel Wire Rod From Saudi Arabia,* 57 Fed.Reg. 8,303 (Dep't Comm.1992). The fifth administrative review for the calendar year 1991 is now in progress. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 57 Fed.Reg. 9,104 (Dep't Comm. 1992). Parties filed suits in this court challenging the result of the fourth administrative review, Consol.Court No. 92–04–00247, which are stayed pending the disposition of the case at bar.