**Slip Op. 09-54**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SOLVAY SOLEXIS S.p.A. and SOLVAY SOLEXIS, INC., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No. 07-00481 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| E.I. DuPONT de NEMOURS & CO., | |
| Defendant-Intervenor. | |

<u>OPINION</u>

[Commerce's final antidumping duty administrative review determination is sustained.]

Dated: June 11, 2009

<u>Miller & Chevalier Chartered</u> (<u>John R. Magnus</u>, <u>Daniel P. Wendt</u>, and <u>David T. Hardin, Jr.</u>) for Plaintiffs Solvay Solexis S.p.A. and Solvay Solexis, Inc.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Reginald T. Blades, Jr.</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Stephen C. Tosini</u> and <u>David S. Silverbrand</u>); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (<u>Jonathan Zielinksi</u>), Of Counsel, for Defendant United States.

<u>Wilmer, Cutler, Pickering, Hale & Dorr, LLP</u> (<u>Ronald I. Meltzer</u>, <u>Jennifer A. Lewis</u>, <u>John D. Greenwald</u>, <u>Patrick McLain</u>, and <u>Raman Santra</u>) for Defendant-Intervenor E.I. DuPont de Nemours & Co.

**GOLDBERG, Senior Judge:**  In this action, plaintiffs Solvay Solexis S.p.A. and Solvay Solexis, Inc. (collectively "Solvay Solexis"), the sole Italian producer of granular polytetrafluoroethylene ("PTFE") subject to this administrative review, challenge the decision of the International Trade Administration of the United States Department of Commerce ("Commerce") in the Final Results of Antidumping Duty Administrative Review: Granular Polytetrafluoroethylene Resin From Italy, 72 Fed. Reg. 65,939 (Dep't Commerce Nov. 26, 2007) ("Final Results").  Solvay Solexis disputes Commerce's reliance on certain financial statements in calculating the cost of production of PTFE.  In responding to Commerce's questionnaires for the 18th Administrative Review, Solvay Solexis based its cost of manufacturing calculations on unaudited financial statements prepared in accordance with Italian GAAP ("statutory financial statements").  These particular financial statements included a line item for goodwill.[1]  However, for the company's general and administrative ("G&A") expense ratio, Solvay Solexis submitted management profit and loss statements that were

---

[1] Goodwill is created when a company purchases assets at a price that is higher than the assets' preexisting book value; it is the difference between the amount paid and the preexisting book value. Stephen R. Moehrle, Say good-bye to pooling and goodwill amortization, Journal of Accountancy, Sept. 30, 2001, at 32.  Goodwill is carried on a company's balance sheet as an intangible asset that can lose value over time. Accounting systems differ, however, in the way the loss in the value of goodwill is recognized. Under Italian GAAP, goodwill is amortized on a 20-year straight line basis.

prepared in accordance with International Financial Reporting Standards ("IFRS").[2]  In making its own determination, Commerce adjusted Solvay Solexis' reported G&A expense ratio to reflect the amount of goodwill depreciation recorded in the company's unaudited financial statements prepared in accordance with Italian GAAP, instead of the audited statements prepared under IFRS.  The cost of production was then calculated based on the adjusted amount.  This adjustment resulted in an increased dumping margin for Solvay Solexis.

Solvay Solexis argues that Commerce's G&A expense ratio revision is not supported by substantial evidence because including goodwill depreciation in a purchased company's G&A calculation is distortive of the actual cost of production and contrary to Commerce precedent.  It maintains that the reported goodwill is not attributable to the company, but was created by a purchase made by Solvay SA, its parent company.  Solvay Solexis also claims that it was denied due process in this administrative review.  Commerce and the Defendant-Intervenor respond that Solvay Solexis has not proven that the data in the statutory financial statements is distortive and further, that

---

[2] In responding to Commerce's questionnaires for this review period, Solvay Solexis explained: "Solexis SpA does not have audited unconsolidated financial statements since it is not a listed company but a subsidiary of Solvay SA.  Its unaudited financial statements submitted herein as Exhibit SQD-5 are prepared according to Italian GAAP (for tax purposes), and the figures sent to Solvay SA for consolidation into audited financial statements are prepared in accordance with IFRS." Letter from M. Rosch to the Secretary of Commerce, June 1, 2007, Supplemental Section D Response at SQD-4 (PR Doc. 26).

the record indicates that Solvay Solexis correctly recorded the goodwill on its own financial statement prepared in accordance with Italian GAAP and, in fact, incurred the related expenses. For the reasons that follow, the court affirms Commerce's findings.

## I.  <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006).

A court shall hold unlawful Commerce's final determination in an antidumping administrative review if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." Tariff Act of 1930, § 516a, 19 U.S.C. § 1516a(b)(1)(B)(i) (2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (<u>quoting</u> <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966) (<u>citing</u> <u>NLRB v. Nevada Consol. Copper Corp., 316 U.S. 105, 106</u> (1942)).  The Court need only find evidence "which could reasonably lead" to the conclusion drawn by Commerce, thus making it a "rational decision." <u>Matsushita Elec. Indus. Co. v.</u>

United States, 750 F.2d 927, 933 (Fed. Cir. 1984).  Commerce's

determination may be deemed unlawful "where Commerce has failed

to carry out its duties properly, relied on inadequate facts or

reasoning, or failed to provide an adequate basis for its

conclusions." Rhone Poulenc, Inc. v. United States, 20 CIT 573,

575, 927 F. Supp. 451, 454 (1996).

## II. **DISCUSSION**

When Commerce determines whether subject merchandise is

being, or is likely to be, sold at less than fair value, the

agency makes a fair comparison between the export price, or

constructed export price, and normal value. Tariff Act of 1930 §

773, 19 U.S.C. § 1677b(a) (2006).  Sales made in the home

country for less than the cost of production, however, may be

disregarded in the determination of normal value. 19 U.S.C. §

1677b(b)(1).  The cost of production is normally calculated

"based on the records of the exporter or producer of the

merchandise, if such records are kept in accordance with the

generally accepted accounting principles of the exporting

country...and reasonably reflect the costs associated with the

production and sale of the merchandise." 19 U.S.C. §

1677b(f)(1)(A).  In determining the cost of production, the cost

of materials and fabrication, general and administrative

expenses, and the cost of packaging are included. 19 U.S.C. §

1677b(b)(3).

### A. Commerce properly included goodwill depreciation in calculating Solvay Solexis' cost of production

In 2002, prior to the administrative review period in question,[3] Solvay SA acquired another company, Ausimont.  Prior to the acquisition, Ausimont was owned by Agora, an unaffiliated company.  To effectuate the purchase, a subsidiary of Solvay SA, Solvay Fluorati S.p.A. ("Fluorati"), acquired 100 percent of Agora's stock.  Later that year, Ausimont merged into Agora, and then the two combined companies merged with Fluorati.  The resulting entity was renamed Solvay Solexis.

Solvay Solexis argues that including the goodwill amount indicated in its statutory financial statements in the cost of production calculation does not reasonably reflect the actual costs of production.  It claims this inclusion is distortive because the goodwill is not attributable to Solvay Solexis, but rather to Solvay SA, the parent company.  Solvay Solexis states that the goodwill recognized in its statutory financial statements stems from the Ausimont/Agora merger and the subsequent Agora/Fluorati merger.  It attributes this acquisition to the parent company Solvay SA.  In its Final Results, Commerce found that the goodwill was attributable to Solvay Solexis because it was included in its unaudited statutory financial statement.  Commerce now argues that Solvay

---

[3] The period of review at issue is August 1, 2005 through July 31, 2006.

Solexis, as the resulting entity of the mergers, correctly recognized the goodwill as originating on its own books and records.  Commerce also states that because Solvay SA never directly acquired any of these companies, Solvay SA could not have recognized the goodwill asset at issue.

This Court "has consistently upheld Commerce's reliance on a firm's expenses as recorded in the firm's financial statements, as long as those statements were prepared in accordance with the home country's GAAP and does not significantly distort the firm's actual costs," with the burden of proving distortion falling on the company. Cinsa, S.A. de C.V. v. United States, 21 CIT 341, 345, 966 F. Supp. 1230, 1235 (1997) (citing FAG U.K. Ltd. v. United States, 20 CIT 1277, 1290, 945 F. Supp. 260, 271 (1996)).  There is no question here that the financial statements Commerce chose to rely upon were prepared in accordance with Italian GAAP; the issue remains whether the use of those statements were distortive of Solvay Solexis' actual costs of production.

In its attempt to show that the use of goodwill in the cost of production calculations was distortive, Solvay Solexis points to its responses to Commerce's questionnaires.  In its responses, Solvay Solexis produced documentation that it purports proves the origins of the goodwill and presumably indicates that it is not attributable to Solvay Solexis.

Included in this evidence presented to Commerce were excerpts from Solvay SA's 2002 annual report discussing the creation of Solvay Solexis and a table stating that the amount of goodwill listed in the statutory financial statement was derived from the amount of goodwill generated by Solvay SA's acquisition of Ausimont.

Based on the record evidence, Commerce determined that Solvay Solexis must have acquired the goodwill through some other transaction because it was not traceable to Solvay SA. This is not an unreasonable conclusion.  An explanation of a transaction in 2002 does not necessarily explain why the goodwill appears on Solvay Solexis' statutory financial statements in 2005 and 2006.  In addition, simply because the amount of amortized goodwill in the statutory financial statement is equivalent to the amount that presumably was produced from the 2002 transaction does not conclusively show the origin of the goodwill.  Solvay Solexis failed to explain why the amortization of goodwill appeared only in its own financial statements and the consolidated statements of Solvay SA, which would necessarily include the assets of all of Solvay SA's subsidiaries, including Solvay Solexis.  Solvay Solexis neither responded to nor addressed these arguments, i.e., by proffering Solvay SA's unconsolidated financial statements to rebut the record evidence.

Commerce has previously determined that including goodwill depreciation in the costs of a reporting company is appropriate. Decision Memorandum, A-122-838 (Apr. 2, 2002), Admin. R. Pub. Doc. G205, available at http://ia.ita.doc.gov/frn/summary/canada/02-7848-1.txt.  Solvay Solexis did not explain exactly why the amortized goodwill would not be an accurate cost of production, e.g., why it is distortive.  If it was represented as a cost in its financial statements, it is related to the company's general and administrative costs.  Solvay Solexis acknowledged that the purchaser of a company, who has paid for the goodwill and owns the declining asset, may suffer a cost from the amortized goodwill.  The same may be true for any company that represents goodwill as a loss on its statutory financial statements.

In an attempt to explain the existence of goodwill in its statutory financial statements, Solvay Solexis maintains that it included the goodwill solely for a tax benefit permitted by Italian GAAP.  Solvay Solexis cites two Commerce decisions where Commerce excluded certain recorded depreciation expenses because they were solely related to tax purposes. Final Determination of Sales at Less than Fair Value: Antidumping Duty Investigation of Stainless Steel Angle from Japan, 60 Fed. Reg. 16,608 (Dep't Commerce Mar. 31, 1995); Fresh and Chilled Atlantic Salmon from Norway: Final Results of Antidumping Duty Administrative Review,

58 Fed. Reg. 37,912 (Dep't Commerce July 14, 1993).  However,

Solvay Solexis' case is unlike either of those cited.  In both

cases, Commerce had a basis to conclude that Japan and Norway

permitted their companies to <u>accelerate</u> depreciation in certain

situations for tax reasons, which was not representative of

actual costs of production. <u>Stainless Steel Angle from Japan</u>, 60

Fed. Reg. at 16,617; <u>Fresh and Chilled Atlantic Salmon from</u>

<u>Norway</u>, 58 Fed. Reg. at 37,915.  Here, there was no basis for

Commerce to conclude that Italian GAAP specifically allows a

subsidiary company to record goodwill depreciation on its own

financial statements when, in actuality, the goodwill relates to

a transaction attributable solely to another company.  Notably,

neither <u>Stainless Steel Angle from Japan</u> nor <u>Fresh and Chilled</u>

<u>Atlantic Salmon from Norway</u> dealt with information stemming from

GAAP complaint financial statements, such as in the case at bar.

In this case, given the statutory preference for home country

GAAP compliant financial statements, it is reasonable for

Commerce to prefer the subsequent information presented in those

statements.  There is insufficient evidence that taking goodwill

into account is distortive of actual costs as in the above

cases.  Considering this lack of proof, even if Solvay Solexis

had voluntarily used the goodwill for a tax benefit, a company

cannot reap the benefits of an expense for tax purposes, but use

the amount differently for antidumping duty purposes. <u>Laclede</u>
<u>Steel Co. v. United States</u>, 18 CIT 965, 976 (1994).

In sum, because Solvay Solexis could not sufficiently prove
that relying on its statutory financial statements would be
distortive, Commerce did not deviate from its normal practice,
and this decision is supported by substantial evidence.
Commerce could have found differently.  However, as dictated by
the standard of review, simply because there are two possible
inconsistent conclusions does not inherently prohibit either
conclusion from being supported by substantial evidence.
<u>Consolo</u>, 383 U.S. at 620.

## B. <u>Solvay Solexis was not denied due process</u>

Solvay Solexis claims that Commerce denied it due process
by (1) failing to inform Solvay Solexis of any deficiency in the
record; (2) failing to consider submitted factual information;
and (3) by announcing a "last-minute" presumption that any
goodwill appearing on Solvay Solexis' financial statements must
relate to Solvay Solexis' own acquisitions of companies and not
to the parent company, Solvay SA.

In making its argument, Solvay Solexis relies on the Tariff
Act of 1930 § 782, 19 U.S.C. § 1677m(d) (2006), which provides
that Commerce has an obligation to notify the respondent if a
"response to a request for information...does not comply with
the request" and to provide the respondent "with an opportunity

to remedy or explain the deficiency."  This provision, however, only applies when a response to a request is deemed noncompliant, or is deficient. Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1338 (Fed. Cir. 2002). Since Commerce did not find any of Solvay Solexis' submitted data to be deficient or unsatisfactory, Solvay Solexis' reliance on this provision is misplaced.  The submitted financial statements complied with the statutory terms and Commerce did not reject any of the factual information contained therein. What Commerce rejected, however, was Solvay Solexis' argument that the submitted data proved that the goodwill in question arose from Solvay SA's purchase of Ausimont.  Quite simply, Commerce came to a contrary conclusion based on competent evidence, and Commerce is not required to grant Solvay Solexis continuous opportunities to prove its case until it succeeds.

Moreover, even if Commerce had deemed the evidence to be deficient, it cannot be said that Solvay Solexis was denied due process when the evidence that Solvay Solexis proffers now to explain the origin of the goodwill is identical to what Solvay Solexis supplied Commerce in its responses to Commerce's questionnaires.  That Solvay Solexis made the same arguments regarding the same evidence before Commerce demonstrates that it had an opportunity to, and did, explain what it perceives to be a deficiency.

Solvay Solexis also argues that Commerce violated 19 U.S.C. § 1677m(e) by failing to consider factual information it submitted. Solvay Solexis, however, has not alleged with any specificity how Commerce has failed to take into account submitted evidence. After Solvay Solexis attempted to show why the statutory financial statements should not be used, Commerce determined that the record evidence demonstrated that Solvay Solexis recorded the goodwill in its financial statement in accordance with Italian GAAP and that the provided documentation did not show that the goodwill belongs to Solvay SA. Since Commerce did consider all of the provided information, this argument is without merit.

Finally, as to whether Commerce unlawfully "sprung a trap" in the final determination, this Court has held that Commerce carries the burden of providing notice to respondents if it decides to apply a new factual presumption that is contrary to, or a significant departure from, its previous or traditional methodology. Transcom, Inc. v United States, 182 F.3d 876, 881 (Fed. Cir. 1999); Sigma Corp. v. United States, 17 CIT 1288, 1303, 841 F. Supp. 1255, 1267 (1993). In Sigma Corp., the Court found it improper for Commerce to shift from company-specific to country-specific margins in the final results when Commerce had already granted respondents company-specific margins in a prior determination as well as in the preliminary results. 17 CIT at

1303, 841 F. Supp. at 1267.  The Court stated that if "Commerce felt that it should issue country-wide rates after publishing its preliminary results, then Commerce should have issued an amended preliminary determination or provided respondents with supplemental questionnaires requesting additional proof...Instead, Commerce simply changed its position without giving notice to the respondents." Id.  Similarly, in British Steel PLC v. United States, 19 CIT 176, 255-56, 879 F. Supp. 1254, 1316-17 (1995), the Court found that Commerce was obligated to provide notice to the respondents of its adoption of the "tying presumption" since this presumption constituted a departure from its traditional practice.

Both Sigma Corp. and British Steel fail to support Solvay Solexis' due process argument.  The two cases are inapposite because both involved a basic change in Commerce practice without notice to the respondent or an opportunity to comment. Here, Commerce did not modify its standard procedure or policy. The statutory preference for Commerce is, and has been, to rely on the financial statements prepared in accordance with the respondent's home country GAAP.  Solvay Solexis' statutory financial statements showed that it incurred a cost for amortization of goodwill and thus, Commerce treated the recognized goodwill as a period cost.  Furthermore, in the previous year's 17th administrative review, Commerce had

included the goodwill cost as part of Solvay Solexis' G&A

calculation.  Commerce thereby gave notice to Solvay Solexis

that unless it provided Commerce with a reason to change its

normal value calculation methodology, the same method would be

applied in the following administrative review.  Finally, as

stated before, Solvay Solexis was not deprived of an opportunity

to be heard.  In sum, Solvay Solexis' due process arguments

fail.

C. **Solvay Solexis may not seek an advisory opinion stating that it may challenge Commerce's treatment of non-dumped sales**

Solvay Solexis requests that this court issue an advisory

opinion preserving Solvay Solexis' ability to contest the

zeroing of negative comparisons in the event that such issues

arise should the court choose to remand the case.  A court may

not render an advisory opinion when there is no case or

controversy. See U.S. Const. art. III, § 2; Georgetown Steel

Corp. v. United States, 16 CIT 1084, 1087, 810 F. Supp. 318, 321

(1992).  The duty of the court is "to decide actual

controversies by a judgment which can be carried into effect,

and not to give opinion upon moot questions or abstract

propositions, or to declare principles or rules of law which

cannot affect the matter in issue in the case before it."

Georgetown Steel Corp., 16 CIT at 1084, 810 F. Supp. at 321

(citing Mills v. Green, 159 U.S. 651, 653 (1895)).  This court

agrees with Commerce that there is no reason to opine as to whether Solvay Solexis has preserved a hypothetical challenge to a determination that has not been and may never be made. The practice of zeroing has not occurred in this case.  Solvay Solexis will be free to pursue the issue when and if it arises.

### III. <u>CONCLUSION</u>

Commerce reasonably included the amortized goodwill stated in Solvay Solexis' statutory financial statements in its cost of production calculation, and Solvay Solexis was not denied due process in this administrative review.

For the foregoing reasons, the court sustains Commerce's final determination.

_/s/ Richard W. Goldberg_____
**Richard W. Goldberg**
**Senior Judge**

**Date:      June 11, 2009**
**           New York, New York**