**Slip Op. 09-90**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SOLVAY SOLEXIS S.p.A. and SOLVAY SOLEXIS, INC., | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No. 07-00037 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| E.I. DuPONT de NEMOURS & CO., | |
| Defendant-Intervenor. | |

**OPINION**

[Commerce's final antidumping duty administrative review determination is sustained.]

Dated: August 27, 2009

Fulbright & Jaworski, LLP (J. Scott Maberry) for Plaintiffs Solvay Solexis S.p.A. and Solvay Solexis, Inc.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Stephen C. Tosini); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Jonathan Zielinksi), Of Counsel, for Defendant United States.

Wilmer, Cutler, Pickering, Hale & Dorr, LLP (Ronald I. Meltzer, Jennifer A. Lewis, John D. Greenwald, Patrick McLain, and Raman Santra) for Defendant-Intervenor E.I. DuPont de Nemours & Co.

**GOLDBERG, Senior Judge:**   In this action, plaintiffs Solvay Solexis S.p.A. and Solvay Solexis, Inc. (collectively "Solvay Solexis") challenge the decision of the International Trade Administration of the United States Department of Commerce ("Commerce") in the Notice of Final Results of Antidumping Duty Administrative Review: Granular Polytetrafluoroethylene Resin From Italy, 72 Fed. Reg. 1980 (Dep't Commerce Jan. 17, 2007). This action closely tracks the issues previously decided by this Court in Solvay Solexis S.p.A. and Solvay Solexis, Inc. v. United States, 33 CIT __, Slip Op. 09-54 (June 11, 2009).  As in the prior case, Solvay Solexis disputes Commerce's reliance on certain financial statements in calculating the company's general and administrative expenses.  It also challenges Commerce's methodology in allocating expenses for those calculations.

In responding to Commerce's questionnaires for the 17th Administrative Review, Solvay Solexis provided information from two separate financial statements in response to various questions—unaudited financial statements prepared in accordance with Italian GAAP ("statutory financial statements") and audited statements prepared in accordance with International Financial Reporting Standards ("IFRS").  The statutory financial

statements included a line item for depreciated goodwill,[1] while the IFRS-compliant statements did not.  In its questionnaire responses concerning the company's general and administrative ("G&A") expense ratio, Solvay Solexis based its calculations on the latter statements, which did not include the goodwill.  In making its own determination, Commerce adjusted Solvay Solexis' reported G&A expense ratio to reflect the amount of goodwill depreciation recorded in the company's unaudited financial statements prepared in accordance with Italian GAAP, instead of the audited statements prepared under IFRS.  The cost of production was then calculated based on the adjusted amount. This adjustment resulted in an increased dumping margin for Solvay Solexis.

Solvay Solexis argues that Commerce's G&A expense ratio revision is not supported by substantial evidence because including goodwill depreciation in a purchased company's G&A calculation is not representative of the actual cost of production and the use of unaudited financial statements is contrary to Commerce precedent.  In response, Commerce and the Defendant-Intervenor maintain that Commerce was merely following

---

[1] Goodwill is created when a company purchases assets at a price that is higher than the assets' preexisting book value; it is the difference between the amount paid and the preexisting book value. Stephen R. Moehrle, Say good-bye to pooling and goodwill amortization, Journal of Accountancy, Sept. 30, 2001, at 32.  Goodwill is carried on a company's balance sheet as an intangible asset that can lose value over time. Accounting systems differ, however, in the way the loss in the value of goodwill is recognized. Under Italian GAAP, goodwill is amortized on a 20-year straight line basis.

the statutorily preferred methodology in making its G&A expense calculations.  In addition, they claim that Solvay Solexis has not proven that the data in the statutory financial statements is distortive.

Solvay Solexis also contends that Commerce improperly based its G&A expense ratio calculations on a division of the company rather than on the performance of the company as a whole.  For the reasons that follow, the court affirms Commerce's findings.

## I.   <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006).

A court shall hold unlawful Commerce's final determination in an antidumping administrative review if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." Tariff Act of 1930, § 516A, 19 U.S.C. § 1516a(b)(1)(B)(i) (2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (<u>quoting</u> <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966) (<u>citing</u> <u>NLRB v. Nevada Consol. Copper Corp.</u>, 316

U.S. 105, 106 (1942)).  The Court need only find evidence "which could reasonably lead" to the conclusion drawn by Commerce, thus making it a "rational decision." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).  Commerce's determination may be deemed unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." Rhone Poulenc, Inc. v. United States, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996).

## II. **DISCUSSION**

When Commerce determines whether subject merchandise is being, or is likely to be, sold at less than fair value, the agency makes a fair comparison between the export price, or constructed export price, and normal value. Tariff Act of 1930 § 773, 19 U.S.C. § 1677b(a) (2006).  Sales made in the home country for less than the cost of production, however, may be disregarded in the determination of normal value. 19 U.S.C. § 1677b(b)(1).  The cost of production is normally calculated "based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country...and reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A).  In determining the cost of production, the cost

of materials and fabrication, general and administrative expenses, and the cost of packaging are included. 19 U.S.C. § 1677b(b)(3).   At issue in this case are Commerce's calculation basis and methodology for Solvay Solexis' general and administrative expenses.

   A. Commerce permissibly utilized the Italian GAAP-compliant financial statements in its G&A calculations

Solvay Solexis challenges Commerce's use of its unaudited statutory financial statements in calculating its G&A expenses. Solvay Solexis maintains that Commerce has a longstanding tradition of preferring audited financial statements and that it specifically requested audited financial statements in the questionnaire.  In addition, Solvay Solexis argues that the inclusion of goodwill in its statutory financial statements does not accurately reflect its actual production costs and that the goodwill was only included in those statements because of its treatment under Italian tax law.  It states that the goodwill in question relates to the 2002 purchase of Ausimont, an Italian company, by Solvay Solexis' parent company, Solvay S.A. According to the Plaintiffs, Ausimont eventually became Solvay Solexis.  The parent company accounted for the goodwill in its financial statements at the time of the purchase.  However, Solvay Solexis claims that it was able to take advantage of the depreciated goodwill under Italian tax law in its own 2004

statutory financial statements.  It argues that no expense was actually incurred due to the inclusion of the goodwill in its statutory financial statements.

While there is a preference toward audited statements, Commerce's ultimate purpose is to acquire the most complete and accurate financial picture of the company.  In fact, unaudited statements are accepted by Commerce when they are prepared in the normal course of business, and not created specifically for a dumping proceeding. Certain Steel Concrete Reinforcing Bars From Turkey: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 67 Fed. Reg. 66,110 (Dep't of Commerce Oct. 30, 2002), and accompanying Issues and Decisions Memorandum at Comment 4.  In this case, Solvay Solexis' statutory financial statements were prepared for Italian tax purposes, and thus Commerce could be reasonably assured that no data manipulation occurred. See id.

Statutorily, Commerce is instructed to calculate cost of production "based upon the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country...and reasonably reflect the costs associated with the production and sale of merchandise." 19 U.S.C. § 1677b(f)(1)(A). Solvay Solexis' statutory financial statements were in compliance with Italian GAAP.  Thus, they are a permissible

source for cost of production calculations should they

reasonably reflect the production costs.

Solvay Solexis insists that the IFRS-compliant financial

statements are the normal books and records of the company,

implying that the statutory financial statements are somehow

abnormal.  While Solvay Solexis reiterates that the inclusion of

goodwill does not reflect the actual costs of production, it

provides little evidence to prove this point.  Even if the

goodwill stemmed from the 2002 transaction by Solvay S.A. as

Solvay Solexis claims,[2] including the depreciated goodwill for

2004 tax purposes is an expense to Solvay Solexis, which can be

legitimately attributed to its G&A expenses.  Commerce has

previously found that "amortization of goodwill...reflects the

---

[2] Contrary to the Defendant and Defendant-Intervenor's claim, Solvay Solexis
is not prevented from arguing that the goodwill properly belongs to Solvay
S.A.  Merely because the argument, in this specific form, was not raised in
the agency proceedings below, does not automatically render it unavailable to
the Plaintiff now.  Generally, it is only when the issue is not fully raised
below is it found not to have been "exhausted" for the purposes of review in
this court. See Carpenter Tech. v. United States, 30 CIT 1595, 1597-98, 464
F. Supp. 2d 1347, 1349 (2006) (finding that an issue was exhausted because it
was not included in the case brief before the agency); Ta Chen Stainless
Steel Pipe, Ltd. v. United States, 28 CIT 627, 645, 342 F. Supp. 2d 1191,
1206-07 (2004) (the Court stated that all arguments must be raised below to
properly exhaust the claim, but found lack of exhaustion based on failure to
raise the entire issue below).  At the administrative review stage, Solvay
Solexis claimed that the unaudited statutory financial statements did not
represent the most accurate costs submitted for G&A expense purposes.  The
argument now raised is that the statutory financial statements do not
accurately represent Solvay Solexis' costs because the goodwill is properly
attributed to Solvay S.A.  This argument is an extension of this same issue.
Commerce had a chance to review this issue; thus, it was properly exhausted.
It should be noted that this is unlike Rhone Poulenc v. United States, 899
F.2d 1185, 1191 (Fed. Cir. 1990), where the Court found that the argument was
intentionally ignored for "tactical reasons."  Here, there are no allegations
of such tactics and the argument raised is an extension of previously made
arguments.

current year's portion of the decrease in value of the acquired assets." <u>Notice of Final Determination of Sales at Less Than Fair Value: Certain Softwood Lumber Products from Canada</u>, 67 Fed. Reg. 15,539 (Dep't Commerce Apr. 2, 2002), and accompanying Issues and Decisions Memorandum at Comment 16; <u>see</u> <u>Notice of Final Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products from Brazil</u>, 67 Fed. Reg. 62,134 (Dep't Commerce Oct. 3, 2002), and accompanying Issues and Decisions Memorandum at Comment 23.  It is not necessarily "irrelevant tax data," as alleged by Solvay Solexis.

Solvay Solexis simply states that the goodwill stemmed from a prior transaction, but attempts to brush away its inclusion in the statutory financial statements as solely a tax benefit. This does not, with nothing more, show that the statutory financial statements are not reflective of actual costs of production.  Thus, because Commerce permissibly based its calculations on the statutory financial statements and because Solvay Solexis failed to show that those statements were distortive, Commerce's decision to include the goodwill in the G&A expense calculation is justified with substantial evidence.

B. <u>Commerce Properly Calculated the G&A Expense Ratio</u>

Solvay Solexis also disputes Commerce's method for calculating the G&A expense ratio.  It argues that Commerce did not calculate the G&A expenses as they relate to the company as

a whole, and instead allocated the G&A expenses on a divisional basis.  Solvay Solexis claims that Commerce should have used the audited consolidated financial statements, which include Solvay S.A. and affiliated entities, to calculate the G&A expense ratio, rather than the unconsolidated statutory financial statements, which only included Solvay Solexis.

There is no specific statutorily prescribed method for calculating G&A expenses. See 19 U.S.C. § 1677b(b).  While it is Commerce's practice to calculate them based on the company as a whole, this refers to the producing company. See Silicomanganese from India: Notice of Final Determination of Sales Less Than Fair Value and Final Negative Critical Circumstances Determination, 67 Fed. Reg. 15,531(Dep't Commerce Apr 2. 2002), and accompanying Issues and Decision Memorandum at Comment 24 (emphasis added).  Commerce typically calculates expenses based on the company's unconsolidated financial statements, and not on a parent company's consolidated financial statement. Notice of Final Determination of Sales at Less Than Fair Value: Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 15,539 (Dep't Commerce Apr. 2, 2002), and accompanying Issues and Decisions Memorandum at Comment 19. "As a company's consolidated financial statements often include companies with entirely different corporate structures and in entirely different industries from that of the respondent, we consider it preferable to remain at a

company-wide level that more closely represents the company and industry under investigation." Id.  The G&A expense calculation is thus derived from the company generating the product under investigation. Notice of Final Determination of Sales at Less Than Fair Value: Structural Steel Beams from South Africa, 67 Fed. Reg. 35,485 (Dep't Commerce May 20, 2002), and accompanying Issues and Decision Memorandum at Comment 6.

Here, the producing company in question is Solvay Solexis, not Solvay S.A.  Thus, it is entirely appropriate for Commerce to rely on Solvay Solexis' unconsolidated financial statements to calculate its G&A expenses.  It would be improper to look at Solvay S.A.'s consolidated financial statements as they likely include many other expenses attributable to other entities. Solvay Solexis provided no evidence that any G&A expenses from its parent company should be taken into account.  Commerce followed its general practice and the G&A expense ratio was calculated based upon the company as a whole, Solvay Solexis. Including the goodwill depreciation that was stated on Solvay Solexis' own unconsolidated financial statement did not shift the G&A expense calculation to a divisional, rather than a company-wide, basis.

### III. CONCLUSION

Commerce reasonably included the amortized goodwill stated in Solvay Solexis' statutory financial statements in its cost of

production calculation, and properly calculated the G&A expense ratio.

For the foregoing reasons, the court sustains Commerce's final determination.


                                        __/s/ Richard W. Goldberg____
                                        **Richard W. Goldberg**
                                        **Senior Judge**

**Date:       August 27, 2009**
             **New York, New York**